**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| HERB REED ENTERPRISES, LLC, a Massachusetts company,<br>*Plaintiff-counter-defendant - Appellee*,<br><br>v.<br><br>FLORIDA ENTERTAINMENT MANAGEMENT, INC., a Nevada company; LARRY MARSHAK,<br>*Defendants-counter-claimants - Appellants*. | No. 12-16868<br><br>D.C. No.<br>2:12-cv-00560-MMD-GWF<br><br><br>OPINION |

Appeal from the United States District Court
for the District of Nevada
Miranda Du, District Judge, Presiding

Argued and Submitted
March 12, 2013—San Francisco, California

Filed December 2, 2013

Before: J. Clifford Wallace, M. Margaret McKeown,
and Sandra S. Ikuta, Circuit Judges.

Opinion by Judge McKeown;
Concurrence by Judge Wallace

## SUMMARY[*]

### Trademark/Preliminary Injunction

Reversing the district court's grant of a preliminary injunction against defendants' use of the mark "The Platters" in connection with a vocal group, the panel held that the likelihood of irreparable harm must be established, rather than presumed, by a plaintiff seeking injunctive relief in the trademark context.

The panel affirmed the district court's holding that earlier New York actions did not have res judicata effect. The panel also held that the plaintiff was not barred by laches from challenging defendants' use of the mark.

As to the plaintiff's likelihood of success on the trademark infringement claim, the panel held that the district court did not err in concluding that the defendants failed to meet their burden of strictly proving the affirmative defense of trademark abandonment.

The panel held that in light of *eBay v. MarcExchange, LLC*, 547 U.S. 388 (2006), and *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008), a plaintiff seeking a preliminary injunction in a trademark infringement case must establish irreparable harm. The panel concluded that even though the district court identified the correct legal principle, the record did not support a determination of the likelihood of irreparable harm.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Concurring, Judge Wallace agreed that the district court's preliminary injunction should be reversed.  He wrote separately to emphasize that the panel was solely reviewing a preliminary injunction and thus could express no views on issues arising after a trial dealing with a permanent injunction.

**COUNSEL**

Cameron Sean Reuber (argued) and Yuval H. Marcus, Leason Ellis LLP, White Plains, New York; Jacob A. Reynolds, Hutchison & Steffen, LLC, Las Vegas, Nevada, for Defendants-Appellants.

Eric Miller Sommers (argued), Sommers Law, PLLC, Portsmouth, New Hampshire; John Lund Krieger, Lewis and Roca LLP, Las Vegas, Nevada, for Plaintiff-Appellee.

**OPINION**

McKEOWN, Circuit Judge:

"The Platters"—the legendary name of one of the most successful vocal performing groups of the 1950s—lives on. With 40 singles on the Billboard Hot 100 List, the names of The Platters' hits ironically foreshadowed decades of litigation—"Great Pretender," "Smoke Gets In Your Eyes," "Only You," and "To Each His Own."  Larry Marshak and his company Florida Entertainment Management, Inc. (collectively "Marshak") challenge the district court's preliminary injunction in favor of Herb Reed Enterprises ("HRE"), enjoining Marshak from using the "The Platters"

mark in connection with any vocal group with narrow exceptions. We consider an issue of first impression in our circuit: whether the likelihood of irreparable harm must be established—rather than presumed, as under prior Ninth Circuit precedent—by a plaintiff seeking injunctive relief in the trademark context. In light of Supreme Court precedent, the answer is yes, and we reverse the district court's order granting the preliminary injunction.

## BACKGROUND

The Platters vocal group was formed in 1953, with Herb Reed as one of its founders. Paul Robi, David Lynch, Zola Taylor, and Tony Williams, though not founders, have come to be recognized as the other "original" band members. The group became a "global sensation" during the latter half of the 1950s,[1] then broke up in the 1960s as the original members left one by one. After the break up, each member continued to perform under some derivation of the name "The Platters." *Marshak v. Reed*, No. 96 CV 2292(NG)(MLO), 2001 WL 92225, at *4 (E.D.N.Y. and S.D.N.Y. Feb. 1, 2001) ("*Marshak I*").

Litigation has been the byproduct of the band's dissolution; there have been multiple legal disputes among the original members and their current and former managers over ownership of "The Platters" mark. Much of the litigation stemmed from employment contracts executed in 1956 between the original members and Five Platters, Inc. ("FPI"), the company belonging to Buck Ram, who became the group's manager in 1954. As part of the contracts, each

---

[1] *The Platters Biography*, ROCK & ROLL HALL OF FAME, http://rockhall.com/inductees/the-platters/bio/ (last visited June 27, 2013).

member assigned to FPI any rights in the name "The Platters" in exchange for shares of FPI stock. *Marshak I*, 2001 WL 92225, at *3. According to Marshak, FPI later transferred its rights to the mark to Live Gold, Inc., which in turn transferred the rights to Marshak in 2009. Litigation over the validity of the contracts and ownership of the mark left a trail of conflicting decisions in various jurisdictions, which provide the backdrop for the present controversy. What follows is a brief summary of the tangled web of multi-jurisdictional litigation that spans more than four decades.

In 1972, FPI sued Robi and Taylor for trademark infringement in California, resulting in a 1974 judgment in Robi's favor, which held that FPI "was a sham used by Mr. Ram to obtain ownership of the name 'Platters.'" *Robi v. Five Platters, Inc.*, 838 F.2d 318, 320 (9th Cir. 1988) ("*Robi I*") (quoting the 1974 decision). By contrast, an analogous dispute between FPI and Williams in New York resulted in a 1982 decision holding that FPI had lawfully acquired exclusive ownership of the name. *Marshak I*, 2001 WL 92225, at *7 (citing the 1982 decision). Williams attempted to circumvent the New York decision by seeking declaratory judgment in the Central District of California based on the 1974 judgment in favor of Robi. He was ultimately unsuccessful; on appeal, we reasoned that Williams could not avoid the claim preclusive effect of the New York judgment by relying on issue preclusion from another case in which he was not a party. *Robi I*, 838 F.2d at 328. We upheld the judgment in favor of Robi, *id.* at 330, and later affirmed the district court's award of compensatory and punitive damages to Robi as well as its cancellation of FPI's three registered trademarks using the words "The Platters." *Robi v. Five Platters, Inc.*, 918 F.2d 1439, 1441 (9th Cir. 1990) ("*Robi II*").

In 1984, FPI sued Reed for trademark infringement in the Southern District of Florida. *Marshak I*, 2001 WL 92225, at *9. The court denied Reed's motion for summary judgment based on the preclusive effect of the 1974 California judgment against FPI. *Id.* Preferring to avoid trial, Reed signed a court-approved stipulation of settlement in 1987, under which he assigned to FPI all rights he had in FPI stock, retained the right to perform as "Herb Reed and the Platters," and agreed not to perform under the name "The Platters." However, the settlement included an "escape clause":

> In the event that a court of competent jurisdiction enters a final order with all appeals being exhausted that provides that The Five Platters, Inc. has no right in the name "The Platters," then nothing contained herein shall be construed to limit Herbert Reed's rights in the name "The Platters" and this agreement shall not inure to any party other than The Five Platters, Inc., and its successors and assigns or Herbert Reed.

A key question is whether the escape clause has now been triggered.

In 2001, Marshak, FPI, and other plaintiffs sued Reed and others for trademark infringement in the Eastern District of New York; Reed counterclaimed, also alleging trademark infringement. *Marshak I*, 2001 WL 92225, at *1. The court interpreted the 1987 settlement as "barr[ing] Reed from asserting that he has any right to the name 'The Platters' as against FPI or those claiming through FPI except as specifically allowed in that agreement, or from otherwise interfering with plaintiffs' rights to the use of 'The Platters.'"

*Id.* at *15.  The court determined that the settlement's escape clause had not been triggered either by *Robi I*, because the Ninth Circuit reversed the judgment in favor of Williams indicating that FPI still had some rights to "The Platters" mark, or by *Robi II*, because cancellation of FPI's federal mark registration did not resolve the question whether FPI was entitled to use the name "The Platters."  *Id.* at *19–20. The district court enjoined Reed from, among other things, interfering with FPI and Marshak's use of the name "The Platters" except as permitted in the 1987 settlement ("the 2001 injunction").  *Id.* at *21.  The Second Circuit affirmed. *Marshak v. Reed*, 13 F. App'x 19 (2d Cir. 2001).

Reed appealed *Marshak I* a second time on the basis that an unpublished Ninth Circuit memorandum issued around the same time triggered the 1987 settlement's escape clause.[2] The Second Circuit vacated and remanded *Marshak I*, *Marshak v. Reed*, 34 F. App'x 8 (2d Cir. 2002), but later affirmed the district court's decision to adhere to its earlier decisions because the Ninth Circuit memorandum left "open the possibility, however remote, that FPI can establish a common law trademark right to the name 'The Platters.'" *Marshak II*, 329 F. Supp. 2d at 185, *aff'd*, *Marshak v. Reed*, 87 F. App'x 208 (2d Cir. 2004).

---

[2] The memorandum held that FPI and other plaintiffs "cannot assert a common law trademark in 'The Platters'" unless they "present evidence that they used the trademark in a way that was not false and misleading." *Five Platters, Inc. v. Powell*, 7 F. App'x 794, 795 (9th Cir. 2001).  The case was remanded for an evidentiary hearing, although the disposition noted that FPI was "unlikely" to be able to make the required showing. *Id.* & n.6.  On remand FPI abandoned the trademark claim and the evidentiary hearing never occurred.  *Marshak v. Reed*, 229 F. Supp. 2d 179, 182 n.2, 184–85 (E.D.N.Y. 2002) ("*Marshak II*") (describing the remand).

HRE, which manages Reed's business affairs and holds his rights, sued FPI and other defendants for trademark infringement in the District of Nevada in 2010. To get around the restrictions in the 1987 settlement, HRE creatively alleged that it owned the "Herb Reed and the Platters" mark and that defendants used a confusingly similar mark, namely "The Platters." *Herb Reed Enters., Inc. v. Bennett*, No. 2:10-CV-1981 JCM (RJJ), 2011 WL 220221, at \*1 (D. Nev. Jan. 21, 2011). FPI was not represented—according to Marshak, FPI was by this time a defunct corporation that had already transferred and no longer owned any rights to "The Platters" mark. The action resulted in a 2011 default judgment and permanent injunction declaring that (1) FPI "never used the mark 'The Platters' in a manner that [was] not false and misleading and thus never acquired common law rights to the mark," and (2) "Reed, having first used the mark 'The Platters' in commerce in 1953, and having continuously used the mark in commerce since then has superior rights to the mark to all others," including FPI and "anyone claiming rights from or through" FPI. *Herb Reed Enters., Inc. v. Monroe Powell's Platters, LLC*, 842 F. Supp. 2d 1282, 1287 (D. Nev. 2012) (quoting the 2011 judgment).

In 2012, HRE successfully obtained a preliminary injunction against Monroe Powell, FPI's former performer employee, and his company in a trademark infringement action in the District of Nevada. *Id.* at 1284. Because Powell claimed to have acquired rights to "The Platters" mark through FPI, there was a question as to whether the 1987 settlement limited Reed's ability to pursue a remedy. The district court held that, "even assuming that the 1987 stipulation applies, the escape clause has been triggered and no longer bars Reed from suing FPI or those claiming through FPI for trademark infringement." *Id.* at 1288. The court

reasoned that the 2011 Nevada default judgment, which "determined that FPI 'has no right in the name "The Platters"'" as required by the 1987 stipulation," was "a final order with all appeals being exhausted" because the judgment was never appealed. *Id.* at 1288–89 (quoting the 2011 judgment).

In the period between the filing of the two Nevada actions, Marshak sued Reed for civil contempt in the Eastern District of New York, alleging that Reed's first Nevada lawsuit violated the 2001 injunction. *Marshak v. Reed*, Nos. 96-CV-2292 (NG)(RML), 11-CV-2582 (NG)(RML), 2012 WL 832269 (E.D.N.Y. Mar. 12, 2012). The court denied Marshak's motion, holding that neither Reed's use of the mark "Herb Reed and the Platters" nor Reed's suit in Nevada protecting that mark constituted a violation of the injunction. *Id.* at *3–5.

Last year brought yet another lawsuit. HRE commenced the present litigation in 2012 against Marshak in the District of Nevada, alleging trademark infringement and seeking a preliminary injunction against Marshak's continued use of "The Platters" mark. The district court held that HRE was not precluded from asserting a right in "The Platters" mark either by the 1987 settlement—the escape clause of which had been triggered by the 2011 Nevada default judgment—or by the equitable doctrine of laches. *Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc.*, No. 2:12-cv-00560-MMD-GWF, 2012 WL 3020039, at *8 (D. Nev. Jul. 24, 2012). The district court found that HRE had established a likelihood of success on the merits, a likelihood of irreparable harm, a balance of hardships in its favor, and that a preliminary injunction would serve public interest. *Id.* at *8–17. Accordingly, the district court granted the preliminary injunction and set the bond at

$10,000.  *Id.* at \*19.    Marshak now appeals from the preliminary injunction.

## ANALYSIS

## I.  RES JUDICATA

As an initial matter, we address whether HRE is foreclosed from bringing the underlying suit by the New York actions, *Marshak I* and *Marshak II*, which resulted in the 2001 injunction barring Reed from interfering with Marshak's use of "The Platters" mark except as permitted by the 1987 settlement.  The district court correctly held that the New York actions do not have res judicata effect.

This action is neither barred by claim preclusion, which prohibits "the parties or their privies from relitigating issues that were or could have been raised" in an action resulting in "[a] final judgment on the merits," *Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981), nor by issue preclusion, which prohibits "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment," *New Hampshire v. Maine*, 532 U.S. 742, 748–49 (2001).  HRE is not "relitigating issues that were or could have been raised" in the New York actions because HRE could not assert its right in "The Platters" name at that time.  As the 2001 injunction confirmed, Herb Reed was then bound by the 1987 settlement, and the escape clause had not yet been triggered. Additionally, the New York actions did not come to a final judgment on the merits of the trademark dispute.  Instead, the Eastern District of New York enjoined Reed from pursuing that litigation on the merits because of the 1987 settlement. The New York cases thus do not have res judicata effect on

either the issue of whether the much later Nevada actions triggered the escape clause, or the issue of trademark ownership, both of which relate to this appeal.

Marshak quibbles with the district court's reliance on the res judicata effect of the Nevada actions—the 2011 default judgment against FPI and the 2012 preliminary injunction against Powell. But the district court explicitly declined to use the 2011 default judgment as offensive collateral estoppel against Marshak on the issue of trademark ownership. *HRE*, 2012 WL 3020039, at *7–8. While the district court referenced the "last in time rule" to resolve any contradiction between the New York actions and the Nevada actions as to whether the 1987 settlement's escape clause has been triggered, *HRE*, 2012 WL 3020039, at *7, such reliance was unnecessary. The language of the escape clause itself is sufficient and does not limit the type of action or who may bring an action that ultimately results in "a final order with all appeals being exhausted that provides that [FPI] has no right in the name 'The Platters.'" Thus, Marshak's complaint that he was not a party to the 2011 default judgment has no traction. Given that there is now a valid judgment with all appeals exhausted declaring that FPI never acquired common law rights to "The Platters" mark, the escape clause has been triggered on its own terms, and HRE is no longer bound by the settlement's restrictions or the 2001 injunction enforcing the settlement.

## II. LACHES

Next, we consider whether HRE is barred from challenging Marshak's use of "The Platters" mark by laches—"an equitable time limitation on a party's right to bring suit, resting on the maxim that one who seeks the help

of a court of equity must not sleep on his rights." *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835 (9th Cir. 2002) (internal quotation marks and citations omitted). The district court properly determined that laches does not foreclose this suit.

The time gap from when HRE "knew or should have known about its potential cause of action" to when it filed its action was not long enough to be unreasonable. *Id*. at 838. HRE could not bring the trademark infringement suit until there was a final ruling with all appeals exhausted that triggered the escape clause. That ruling came in the Nevada default judgment in May 2011.[3] HRE brought this action in April 2012, less than a year after the escape clause was triggered, and less than one month after the Eastern District of New York determined that HRE had not violated that court's 2001 injunction. *HRE*, 2012 WL 3020039, at *8. This delay of under one year is shorter than the most analogous state statute of limitations period, giving rise to a strong presumption against laches. *Jarrow Formulas*, 304 F.3d at 837 ("[W]e hold that if a [Lanham Act] § 43(a) claim is filed within the analogous state limitations period, the strong presumption is that laches is inapplicable. . . ."). Marshak agrees that the limitations period from the most analogous action under state law is three years under Nevada's fraud and "catchall" statute of limitations. Nev. Rev. Stat. § 11.190(3). Because HRE brought its trademark

---

[3] Marshak's argument that HRE should have acted sooner to trigger the escape clause instead of waiting years until after FPI had become a defunct entity is inapposite. Marshak essentially seeks a roundabout way to raise a laches defense in a separate action—HRE's 2010 suit against FPI and others in the District of Nevada—that has already been decided and is not before this court. That argument should have been raised in a timely appeal of the 2011 default judgment.

infringement claim well within three years, we presume that laches is inapplicable.  HRE simply did not dally or unconscionably sit on its claim.  Thus, laches does not preclude consideration of HRE's trademark infringement claim and request for preliminary injunction.

## III.    PRELIMINARY INJUNCTION

To obtain a preliminary injunction, HRE "must establish that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  We review a district court's preliminary injunction for abuse of discretion, a standard of review that is "limited and deferential." *Johnson v. Couturier*, 572 F.3d 1067, 1078 (9th Cir. 2009). If the district court "identified and applied the correct legal rule to the relief requested," we will reverse only if the court's decision "resulted from a factual finding that was illogical, implausible, or without support in inferences that may be drawn from the facts in the record." *United States v. Hinkson*, 585 F.3d 1247, 1263 (9th Cir. 2009) (en banc).

Marshak's key arguments are that the district court erred in concluding that HRE had established a likelihood of success on the merits because Reed abandoned "The Platters" mark and that the district court erred in finding a likelihood of irreparable harm.

**A. LIKELIHOOD OF SUCCESS ON THE UNDERLYING TRADEMARK DISPUTE**

As to its trademark infringement claim, to establish a likelihood of success on the merits HRE must show that it is "(1) the owner of a valid, protectable mark, and (2) that the alleged infringer is using a confusingly similar mark." *Grocery Outlet, Inc. v. Albertson's, Inc.*, 497 F.3d 949, 951 (9th Cir. 2007) (per curiam). Tellingly, Marshak does not challenge the district court's conclusions on these two points,[4] except by asserting the affirmative defense of abandonment on the alleged basis that Reed abandoned "The Platters" mark by signing the 1987 Florida settlement. But "[a]bandonment of a trademark, being in the nature of a forfeiture, must be strictly proved." *Prudential Ins. Co. of Am. v. Gibraltar Fin. Corp. of Cal.*, 694 F.2d 1150, 1156 (9th Cir. 1982). The district court did not err in concluding that Marshak failed to meet that burden.

Marshak has not established either of the two requirements of abandonment under 15 U.S.C. § 1127: (1) discontinuance of trademark use, and (2) intent not to resume use. Although non-use for three consecutive years constitutes prima facie evidence of abandonment, the

---

[4] Marshak does not dispute the district court's finding that HRE is the senior user, or the district court's reasoning invaliding Marshak's claims of ownership. Nor does Marshak contest the district court's determination that Marshak's use of "The Platters" mark is confusingly similar to HRE's use of both "The Platters" and "Herb Reed and the Platters" marks according to the Ninth Circuit's test. *See AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 & n.11 (9th Cir. 1979) (describing the factors relevant to determining whether the alleged infringer is using a confusingly similar mark), *abrogated in part on other grounds by Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 810 (9th Cir. 2003).

standard for non-use is high.  *Id.*  Non-use requires "*complete* cessation or discontinuance of trademark use," where "use" signifies any use in commerce and "includes the placement of a mark on goods sold or transported."  *Electro Source, LLC v. Brandess-Kalt-Aetna Grp., Inc.*, 458 F.3d 931, 936, 938 (9th Cir. 2006) (emphasis in original).   "Even a single instance of use is sufficient against a claim of abandonment of a mark if such use is made in good faith."  *Carter-Wallace, Inc. v. Proctor & Gamble Co.*, 434 F.2d 794, 804 (9th Cir. 1970).

HRE presented evidence that, despite the 1987 settlement, it continued to receive royalties from the sale of The Platters' previously recorded material.  The district court permissibly relied on the declaration of HRE's general manager that "[s]ince . . . approximately 1953, Reed continuously received royalties from Platters recordings, including during the time period after the 1987 Stipulation was signed and after the 2001 Injunction."  The declaration further indicates that HRE received and continues to receive royalties from domestic and international sales and names a range of companies that pay royalties for the use of The Platters' original recordings in other compilations, television ads, movies, or other media. The receipt of royalties is a genuine but limited usage of the mark that satisfies the "use" requirement, especially when viewed within the totality of the circumstances—namely, that Reed was constrained by the settlement.  *See Electro Source*, 458 F.3d at 940 ("Because the abandonment inquiry is tied to the unique circumstances of each case, it is appropriate to look at the totality of the circumstances to determine if genuine, albeit limited, usage of the mark qualifies a trademark use 'in the ordinary course of trade' under § 1127.");  *see also Carter-Wallace*, 434 F.2d at 803–04 (holding that a mark had not been abandoned when the

trademark holder offered a legitimate reason for making only nominal sales, namely waiting for trademark ownership issues to be fully litigated and resolved). Receipt of royalties certainly qualifies as placement of "The Platters" mark on goods sold, and supports the finding that there was no abandonment. *See Marshak v. Treadwell*, 240 F.3d 184, 199 (3d Cir. 2001) ("A successful musical group does not abandon its mark unless there is proof that the owner ceased to commercially exploit the mark's secondary meaning in the music industry.") (internal quotation marks and citation omitted).

We are not persuaded by Marshak's view that HRE's receipt of royalties violated the 1987 settlement and thus is not a "bona fide use" under 15 U.S.C. § 1127, capable of obviating abandonment. It is far from clear that the 1987 settlement, which focused on "the right to perform or entertain" and explicitly excluded "commercial recordings," forbade HRE from collecting royalties on previously recorded material. Additionally, when Marshak sued Reed for civil contempt alleging that Reed had violated the 2001 injunction enforcing the 1987 settlement, Marshak "d[id] not contest that Reed was entitled to such royalties," and the Eastern District of New York held that there was not sufficient evidence "that Reed used 'The Platters' mark in a manner inconsistent with the 2001 Injunction." *Marshak*, 2012 WL 832269, at *3.

We conclude that the record supports the district court's determination that HRE did not abandon "The Platters" mark.

### B.  LIKELIHOOD OF IRREPARABLE HARM

We next address the likelihood of irreparable harm.  As the district court acknowledged, two recent Supreme Court cases have cast doubt on the validity of this court's previous rule that the likelihood of "irreparable injury may be *presumed* from a showing of likelihood of success on the merits of a trademark infringement claim."  *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1066 (9th Cir. 1999) (emphasis added).  Since *Brookfield*, the landscape for benchmarking irreparable harm has changed with the Supreme Court's decisions in *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, in 2006, and *Winter* in 2008.

In *eBay*, the Court held that the traditional four-factor test employed by courts of equity, including the requirement that the plaintiff must establish irreparable injury in seeking a permanent injunction, applies in the patent context.  547 U.S. at 391.  Likening injunctions in patent cases to injunctions under the Copyright Act, the Court explained that it "has consistently rejected . . . a rule that an injunction automatically follows a determination that a copyright has been infringed," and emphasized that a departure from the traditional principles of equity "should not be lightly implied."  *Id.* at 391–93 (citations omitted).  The same principle applies to trademark infringement under the Lanham Act.  Just as "[n]othing in the Patent Act indicates that Congress intended such a departure," so too nothing in the Lanham Act indicates that Congress intended a departure for trademark infringement cases.  *Id.* at 391–92.  Both statutes provide that injunctions may be granted in accordance with "the principles of equity."  35 U.S.C. § 283; 15 U.S.C. § 1116(a).

In *Winter*, the Court underscored the requirement that the plaintiff seeking a preliminary injunction "demonstrate that irreparable injury is *likely* in the absence of an injunction." 555 U.S. at 22 (emphasis in original) (citations omitted). The Court reversed a preliminary injunction because it was based only on a "possibility" of irreparable harm, a standard that is "too lenient." *Id*. *Winter*'s admonition that irreparable harm must be shown to be likely in the absence of a preliminary injunction also forecloses the presumption of irreparable harm here.

Following *eBay* and *Winter*, we held that likely irreparable harm must be demonstrated to obtain a preliminary injunction in a copyright infringement case and that actual irreparable harm must be demonstrated to obtain a permanent injunction in a trademark infringement action. *Flexible Lifeline Sys. v. Precision Lift, Inc.*, 654 F.3d 989, 998 (9th Cir. 2011); *Reno Air Racing Ass'n, Inc., v. McCord*, 452 F.3d 1126, 1137–38 (9th Cir. 2006). Our imposition of the irreparable harm requirement for a permanent injunction in a trademark case applies with equal force in the preliminary injunction context. *Amoco Prod. Co. v. Village of Gambell, AK*, 480 U.S. 531, 546 n.12 (1987) (explaining that the standard for a preliminary injunction is essentially the same as for a permanent injunction except that "likelihood of" is replaced with "actual"). We now join other circuits in holding that the *eBay* principle—that a plaintiff must establish irreparable harm—applies to a preliminary injunction in a trademark infringement case. *See N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1228–29 (11th Cir. 2008); *Audi AG v. D'Amato*, 469 F.3d 534, 550 (6th Cir. 2006) (applying the requirement to a permanent injunction in a trademark infringement action).

Having anticipated that the Supreme Court's decisions in *eBay* and *Winter* signaled a shift away from the presumption of irreparable harm, the district court examined irreparable harm in its own right, explaining that HRE must "establish that remedies available at law, such as monetary damages, are inadequate to compensate" for the injury arising from Marshak's continuing allegedly infringing use of the mark. *HRE*, 2012 WL 3020039, at *15. Although the district court identified the correct legal principle, we conclude that the record does not support a determination of the likelihood of irreparable harm.

Marshak asserts that the district court abused its discretion by relying on "unsupported and conclusory statements regarding harm [HRE] *might* suffer." We agree.

The district court's analysis of irreparable harm is cursory and conclusory, rather than being grounded in any evidence or showing offered by HRE. To begin, the court noted that it "cannot condone trademark infringement simply because it has been occurring for a long time and may continue to occur." The court went on to note that to do so "could encourage wide-scale infringement on the part of persons hoping to tread on the goodwill and fame of vintage music groups." Fair enough. Evidence of loss of control over business reputation and damage to goodwill could constitute irreparable harm. *See, e.g.*, *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush and Co., Inc.*, 240 F.3d 832, 841 (9th Cir. 2001) (holding that evidence of loss of customer goodwill supports finding of irreparable harm). Here, however, the court's pronouncements are grounded in platitudes rather than evidence, and relate neither to whether "irreparable injury is *likely* in the absence of an injunction," *Winter*, 555 U.S. at 22, nor to whether legal remedies, such as money damages, are

inadequate in this case. It may be that HRE could establish the likelihood of irreparable harm. But missing from this record is any such evidence.

In concluding its analysis, the district court simply cited to another district court case in Nevada "with a substantially similar claim" in which the court found that "the harm to Reed's reputation caused by a different unauthorized Platters group warranted a preliminary injunction." *HRE*, 2012 WL 3020039, at *15–16. As with its speculation on future harm, citation to a different case with a different record does not meet the standard of showing "likely" irreparable harm.

Even if we comb the record for support or inferences of irreparable harm, the strongest evidence, albeit evidence not cited by the district court, is an email from a potential customer complaining to Marshak's booking agent that the customer wanted Herb Reed's band rather than another tribute band. This evidence, however, simply underscores customer confusion, not irreparable harm.[5]

The practical effect of the district court's conclusions, which included no factual findings, is to reinsert the now-rejected presumption of irreparable harm based solely on a strong case of trademark infringement. Gone are the days

---

[5] In assessing the evidence with respect to irreparable harm, we reject Marshak's assertion that the district court may rely only on admissible evidence to support its finding of irreparable harm. Not so. Due to the urgency of obtaining a preliminary injunction at a point when there has been limited factual development, the rules of evidence do not apply strictly to preliminary injunction proceedings. *See Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1363 (9th Cir. 1988) ("It was within the discretion of the district court to accept . . . hearsay for purposes of deciding whether to issue the preliminary injunction.").

when "[o]nce the plaintiff in an infringement action has established a likelihood of confusion, it is ordinarily presumed that the plaintiff will suffer irreparable harm if injunctive relief does not issue." *Rodeo Collection, Ltd. v. W. Seventh*, 812 F.2d 1215, 1220 (9th Cir. 1987) (citing *Apple Computer, Inc. v. Formula International Inc.*, 725 F.2d 521, 526 (9th Cir.1984)). This approach collapses the likelihood of success and the irreparable harm factors. Those seeking injunctive relief must proffer evidence sufficient to establish a likelihood of irreparable harm. As in *Flexible Lifeline*, 654 F.3d at 1000, the fact that the "district court made no factual findings that would support a likelihood of irreparable harm," while not necessarily establishing a lack of irreparable harm, leads us to reverse the preliminary injunction and remand to the district court.

In light of our determination that the record fails to support a finding of likely irreparable harm, we need not address the balance of equities and public interest factors.

**REVERSED and REMANDED.**

WALLACE, Senior Circuit Judge, concurring:

I agree that the district court's preliminary injunction should be reversed. However, I write separately to emphasize that we are solely reviewing a *preliminary* injunction, and that we thus can express no view on issues arising after a trial dealing with a permanent injunction. *See, e.g.*, *Barahona-Gomez v. Reno*, 167 F.3d 1228, 1234–35, 1238 (9th Cir. 1999) (stating that the court, in reviewing a preliminary

injunction, "express[ed] no opinion on the ultimate merits of [the] action").