**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

**FILED**

FOR THE NINTH CIRCUIT

FEB 04 2015

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| LIFE ALERT EMERGENCY RESPONSE, INC., a California corporation,<br><br>           Plaintiff - Appellee,<br><br>  v.<br><br>LIFEWATCH, INC., a New York corporation,<br><br>           Defendant - Appellant. | No. 14-55930<br><br>D.C. No. 2:13-cv-03455-JAK-SS<br><br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the Central District of California
John A. Kronstadt, District Judge, Presiding

Argued and Submitted January 9, 2015
Pasadena, California

Before: WARDLAW, W. FLETCHER, and OWENS, Circuit Judges.

Plaintiff-Appellee Life Alert and Defendant-Appellant LifeWatch are both in

the business of selling medical alert devices and monitoring services. When Life

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

1

Alert discovered that telemarketers acting on behalf of LifeWatch were using Life Alert's trademarked slogans, including "Help, I've Fallen and I Can't Get Up," Life Alert brought suit under the Lanham Act, 15 U.S.C. §§ 1051-1127. The district court preliminarily enjoined LifeWatch from using Life Alert's trademarks, affiliating its products with Life Alert, and working with or buying customer accounts from anyone LifeWatch knows "or after a reasonable inquiry should know" is using Life Alert's trademarks. LifeWatch appeals the district court's decision to issue the injunction and challenges the scope of the injunction. We review for abuse of discretion, *Herb Reed Enters. v. Florida Entm't. Mgmt.*, 736 F.3d 1239, 1247 (9th Cir. 2013), and we affirm.

LifeWatch levels three attacks on the district court's decision. It argues that (1) there is no evidence to support the district court's finding that Life Alert is likely to succeed on the merits of its trademark infringement claim; (2) Life Alert has not suffered irreparable harm attributable to LifeWatch; and (3) the terms of the injunction are vague and overbroad. Each of these arguments boils down to one key contention: LifeWatch lacks the ability to monitor and control the telemarketers who solicit customers for its products. As a result, LifeWatch argues that it is not responsible for any infringement on the part of telemarketers and it is unreasonable to expect LifeWatch to rein them in. We reject each of these

2

arguments, and the premise underlying them. As District Judge Kronstadt's excellent opinion illustrates, ample evidence supports the inference that LifeWatch directs, induces, is aware of, and can control the infringing telemarketing.

1. Likelihood of Success on the Merits

LifeWatch first argues that the district court abused its discretion by finding that Life Alert is likely to succeed on the merits of its trademark infringement claim under three theories of liability: direct, contributory, and vicarious liability. LifeWatch is wrong about each theory.

Regarding direct liability, there is evidence supporting an inference that LifeWatch used a mark confusingly similar to Life Alert's mark. *See Herb Reed*, 736 F.3d at 1247. As the district court observed, Life Alert presented several declarations from customers who spoke to telemarketers claiming to represent the company behind the "I've Fallen" commercial, and then received products from LifeWatch. The district court's finding on direct liability is bolstered by other evidence in the record showing that infringing calls originated from LifeWatch's phone number, that telemarketers gave customers LifeWatch's customer service number, and that one telemarketer identified himself as a LifeWatch employee.

The district court also correctly concluded that Life Alert is likely to succeed on the merits of its claim for trademark infringement under the theory of

contributory infringement. A plaintiff can establish contributory infringement in one of two ways. *See Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 853-54 (1982). Life Alert can do both.

The first way is to show that the defendant "'intentionally induced' the primary infringer to infringe." *Perfect 10, Inc. v. Visa Int'l Serv., Ass'n*, 494 F.3d 788, 807 (9th Cir. 2007) (quoting *Inwood*, 456 U.S. at 855). A reasonable inference supports the conclusion that LifeWatch intentionally induced infringement by approving scripts for its telemarketers (the primary infringers) that contained Life Alert's trademarked slogans. First, directly under the telemarketing services agreements and, at the very least, indirectly under the purchase agreements, LifeWatch engaged telemarketers to solicit customers on its behalf. Second, formally under the telemarketing services agreements and perhaps functionally under the purchase agreements, telemarketers are authorized to read only scripts approved by LifeWatch. Third, at least one telemarketer, Worldwide Info Services, used the "I've Fallen" trademark, and contacted customers who then received LifeWatch goods.

The evidence also shows that LifeWatch "continued to supply an infringing product to an infringer with knowledge that the infringer is mislabeling the particular product supplied." *Perfect 10, Inc.*, 494 F.3d at 807. This is the second

4

way to establish contributory infringement. Life Alert is likely to succeed under either the product or service version of this test.

On the product version, LifeWatch has continued to engage telemarketers and sellers to cultivate customers for its products even though it knows, or at least has reason to know, that they are using Life Alert's trademarks. *See Inwood*, 456 U.S. at 853-55. Worldwide used an infringing script during the era in which it could read only scripts approved by LifeWatch. And LifeWatch listens to the sales calls its telemarketers are required to retain and make available for LifeWatch's review.

On the service version, Life Alert can show that LifeWatch controlled and monitored the instrument (the telemarketing calls) the telemarketers and sellers used to infringe Life Alert's trademark. *See Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 984 (9th Cir. 1999). For instance, there is evidence that LifeWatch had the power and practice of approving scripts when it engaged telemarketers pursuant to the old telemarketing services agreements. Pursuant to its new purchase agreements, LifeWatch continues to provide sellers "guidelines" about its products. LifeWatch also reviews sales calls, and advises sales agents to change their message when it hears something it does not like. Finally, LifeWatch could stop the infringement if it wanted to do so. *See Perfect 10*, 494 F.3d at 807.

LifeWatch could exercise its right under the telemarketing services and purchase agreements to terminate its relationship with telemarketers and sellers that fail to comply with trademark law. Without these contracts, telemarketers and sellers would have no reason to make infringing calls.

The district court also correctly found that Life Alert is likely to succeed on the merits of its trademark infringement claim under the theory of vicarious liability. The same evidence of LifeWatch's control over telemarketers that supports the district court's finding on contributory infringement supports the court's finding on vicarious liability. *See id.* ("Vicarious liability for trademark infringement requires 'a finding that the defendant and the infringer have an apparent or actual partnership, have authority to bind one another in transactions with third parties or exercise joint ownership or control over the infringing product.'") (quoting *Hard Rock Café Licensing Corp. v. Concession Servs., Inc.*, 955 F.2d 1143, 1150 (7th Cir. 1992)).

2. Irreparable Harm

The Supreme Court has made clear that courts cannot presume that irreparable harm follows from a likelihood of success on the merits of an infringement claim. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391-93 (2006); *see also Herb Reed*, 736 F.3d at 1249 (applying this principle to

preliminary injunctions for trademark infringement under the Lanham Act). Accordingly, the district judge based his finding of irreparable harm on evidence in the record. A Life Alert employee submitted a declaration reporting numerous and persistent complaints from would-be customers who received robo-calls for what they believed were Life Alert products. Life Alert also submitted emails and social media posts from consumers. This material substantiates the threat to Life Alert's reputation and goodwill. This type of harm constitutes irreparable harm, as it is not readily compensable. *See Stuhlbarg Int'l Sales Co. v. John D. Brush and Co.*, 240 F.3d 832, 841 (9th Cir. 2001).

In response, LifeWatch repeats the refrain: Life Alert may be suffering, but it cannot show that LifeWatch is to blame. As we have already explained, LifeWatch's involvement with the infringing calls can be inferred from its role in approving scripts and monitoring sales calls, the existence of an infringing script belonging to LifeWatch's telemarketing partner, and declarations of customers who were sold LifeWatch products by agents reciting Life Alert's slogan.

3.  The Scope of the Injunction

Lastly, LifeWatch attacks the preliminary injunction for failing to adequately inform LifeWatch of the actions it must take to comply with it. LifeWatch is particularly concerned with the terms that block LifeWatch from

working with, or acquiring customers from, anyone LifeWatch knows "or after a reasonable inquiry should know" uses Life Alert's trademarks in its telemarketing operations.

These terms are perfectly reasonable in light of the relevant liability rule. The "reasonable inquiry" language of the preliminary injunction mirrors the standard for contributory infringement. *See Inwood*, 456 U.S. at 854-55.

It is also readily apparent what LifeWatch must do to comply with the injunction. In explaining why the equities favor the injunction, the district court observed that the injunction requires only that LifeWatch actually do what it already has the power to do: review the recordings of sales calls made on its behalf and terminate its relationships with sellers and telemarketers if it learns they are infringing. This puts LifeWatch on notice of what it must do to stay on the right side of the injunction.

At bottom, LifeWatch would have us believe that any infringement is traceable to actions by telemarketers for which it has no responsibility. The district court did not buy this story of telemarketers-gone-rogue, and neither do we.

**AFFIRMED**.