**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| OTR WHEEL ENGINEERING, INC.; BLACKSTONE/OTR, LLC; F.B.T. ENTERPRISES, INC., <br><br> Plaintiffs - Appellees, <br><br> v. <br><br> WEST WORLDWIDE SERVICES, INC.; SAMUEL J. WEST, individually, and his marital community, <br><br> Defendants - Appellants. | No. 14-35563 <br><br> D.C. No. 2:14-cv-00085-LRS <br><br> MEMORANDUM[*] |

Appeal from the United States District Court
for the Eastern District of Washington
Lonny R. Suko, District Judge, Presiding

Argued and Submitted February 3, 2015
Seattle Washington

Before: FISHER, BEA and MURGUIA, Circuit Judges.

West Worldwide Services, Inc., and Samuel West (collectively "West")

appeal the district court's order granting a preliminary injunction in favor of OTR

Wheel Engineering, Inc., and affiliated plaintiffs (collectively "OTR"). We have

---

[*]This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

jurisdiction under 28 U.S.C. § 1292(a)(1). We review the district court's order for abuse of discretion. *See Flexible Lifeline Sys., Inc., v. Precision Lift, Inc.*, 654 F.3d 989, 994 (9th Cir. 2011). We therefore review the district court's legal rulings de novo and its findings of fact for clear error. *See Indep. Living Ctr. of S. Cal., Inc. v. Shewry*, 543 F.3d 1050, 1055 (9th Cir. 2008). We affirm the order granting a preliminary injunction but modify its terms.

A plaintiff who seeks a preliminary injunction must show "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). If the balance of equities tips "sharply" in the plaintiff's favor, then a court may issue a preliminary injunction upon a showing that there are "serious questions going to the merits – a lesser showing than likelihood of success on the merits." *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)). "Serious questions need not promise a certainty of success, nor even present a probability of success, but must involve a 'fair chance of success on the merits.'" *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988) (quoting *Nat'l Wildlife Fed'n v. Coston*, 773

F.2d 1513, 1517 (9th Cir. 1985)).[1]

**1.** The district court did not clearly err when it found there was a fair chance OTR would prove that its trade dress was nonfunctional, a required element for trade dress protection. *See Secalt S.A. v. Wuxi Shenxi Constr. Mach. Co.*, 668 F.3d 677, 683 (9th Cir. 2012). The court properly relied on the presumption of nonfunctionality that results from OTR having registered its trade dress with the U.S. Patent and Trademark Office. *See Talking Rain Beverage Co. Inc. v. S. Beach Beverage Co.*, 349 F.3d 601, 603, 605 (9th Cir. 2003). *Aromatique, Inc. v. Gold Seal, Inc.*, 28 F.3d 863 (8th Cir. 1994), held only that the presumption of secondary meaning, a different element of trade dress, becomes effective as of the date of registration. *See id.* at 870.[2] West presents no argument for why we should extend the *Aromatique* rule to the element of nonfunctionality.

Even without the presumption, there is sufficient evidence in the record to conclude that OTR had a fair chance of proving nonfunctionality. OTR introduced sworn declarations from its employees and an expert showing that, although all

[1] West does not contest the district court's use of the less-demanding "fair chance of success on the merits" standard.

[2] West argued in its reply brief that the district court's finding regarding secondary meaning was also in error. Because West did not "specifically and distinctly" make this argument in its opening brief, the issue is waived. *See Dream Games of Ariz., Inc. v. PC Onsite*, 561 F.3d 983, 994-95 (9th Cir. 2009).

3

alternating-tread tires serve a self-cleaning purpose, the specific angle and spacing of the lug bars on the tire produced a tread pattern that was purely aesthetic. *See Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1259 (9th Cir. 2001) ("The fact that individual elements of the trade dress may be functional does not necessarily mean that the trade dress as a whole is functional; rather, 'functional elements that are separately unprotectable can be protected together as part of a trade dress.'" (quoting *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 842 (9th Cir. 1987))).

**2.** The district court did not clearly err in finding that OTR had a fair chance of success on its trade secret claim. *See* Wash. Rev. Code § 19.108.010(4). The court identified OTR's trade secret as its tire "recipe." In the record, OTR representatives provided slightly more definition to the trade secret, describing it as the "specific instructions on how to prepare and manufacture the *Outrigger* tires" that were provided to its manufacturer Superhawk, and as a "unique layout of steel and nylon reinforcing materials, and a phased method of construction using specific types of rubber." The declarations OTR proffered are sufficient to find it has a fair chance of proving it has identifiable trade secrets for the purpose of a preliminary injunction. *See id.*

OTR also presented sufficient evidence that it undertook reasonable efforts to maintain the secrecy of the *Outrigger* tire recipe. *See* § 19.108.010(4)(b). It produced declarations and processing agreements showing that it required the entities involved in the production of the tire to sign confidentiality agreements. The evidence is enough, at this stage, for the district court to have concluded that OTR had a fair chance of later establishing it made reasonable efforts at secrecy.

OTR also demonstrated it had a fair chance of proving West misappropriated its tire recipe. *See* § 19.108.010(2). Expert analysis revealed the tires were nearly identical in their geometry, indicating that West was not only imitating the trade dress, but also that it possessed the confidential information required to make a virtual replica of OTR's tire. Declarations also revealed that the same manufacturer of West's Extremelift tire had at one time possessed confidential information for the construction of OTR's *Outrigger* tire. The district court therefore drew a reasonable inference that West, through its manufacturer, improperly used trade secrets related to OTR's *Outrigger* tire. *See id.*[3]

---

[3] As with the issue of secondary meaning, West waived any argument that OTR has not shown trade secret novelty, because West did not "specifically and distinctly" argue the issue in its opening brief. *Dream Games of Ariz.*, 561 F.3d at 994-95.

**3.** The district court did not clearly err in finding that OTR was likely to suffer irreparable harm absent a preliminary injunction. Loss of control over business reputation and damage to goodwill are cognizable irreparable harms in the trademark infringement context. *See Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013). Although the district court's finding of reputational injury was not based on any evidence that West's lookalike tire was an inferior product, *see id.* at 1250-21 (holding that likelihood of irreparable harm must be based on evidence in the record, not "unsupported and conclusory statements regarding harm [the plaintiff] *might* suffer"), the court's finding of goodwill injury was supported by some record evidence. West was selling its allegedly infringing tire to OTR's major customer, Genie Industries, leading OTR to admonish its customer and eventually to question Genie whether it had leaked OTR's confidential information to West. From this, it was reasonable to conclude that OTR would likely suffer a nonquantifiable injury to the goodwill it had created with its customer, and that an injunction preventing West from selling the allegedly infringing tires to Genie and other OTR customers would forestall further deterioration in its business relationships.

**4.** Finally, we do agree with West that the terms of the injunction are overbroad. Although the district court has "considerable discretion in fashioning

the terms of an injunction," an injunction must be "tailored to eliminate only the specific harm alleged." *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1297 (9th Cir. 1992). Subsections b, c and d of the district court's injunction order all prohibit West from engaging in activities that are not alleged, much less shown, to have caused injury to OTR in this case. We therefore modify the terms of the injunction as shown below. *See id.* at 1298 (affirming the terms of an overbroad injunction with modifications to narrow its scope).

1. In subsection b, strike the following: "of OTR's trademarks or".

2. In subsection c, replace "OTR" with "OTR's *Outrigger* model tires," and strike the following: "or (ii) making any false description or representation of origin concerning any goods or services offered for sale by Defendants;".

3.      In subsection d, between the phrases "trade secrets" and "for any reason," insert the following: "pertaining to the *Outrigger* model tire".[4]

---

[4] The following shows how the modified injunction order shall read in full, with strikes through text that has been removed from the original order, with brackets surrounding text that has been added and with all changes in bold:

   1. Defendants, together with their respective agents, servants, employees, affiliates, attorneys, and persons in active concert or participation with them, are hereby enjoined pending entry of judgment in this action from:

   a. Directly or indirectly making any commercial use of OTR's registered trade dress as defined in U.S. Trademark Registration No. 4,220,169 for the *Outrigger* tire tread design, or any tire tread design that is confusingly similar to the *Outrigger* tire tread design;

   b. Directly or indirectly using OTR's *Outrigger* trade dress, or any ~~of OTR's trademarks or~~ colorable imitations thereof, in connection with the sale, offer for sale, advertising or promotion of any goods or services;

   c. Directly or indirectly: (i) manufacturing, producing, distributing, circulating, selling, offering for sale, advertising, promoting or displaying any product or service which tends to relate or connect such product or service in any way to OTR**['s *Outrigger* model tires]**; ~~or (ii) making any false description or representation of origin concerning any goods or services offered for sale by Defendants;~~ and

   d. Directly or indirectly utilizing any of OTR's confidential and proprietary trade secrets **[pertaining to the *Outrigger* model tire]** for any reason.

   2. This injunction shall take effect upon OTR's posting of a bond of $1,800,000 with the Clerk of the Court for the payment of costs and damages that may be incurred by any party found to be wrongfully restrained by this order.

Each party shall bear its own costs on appeal.

**AFFIRMED IN PART and MODIFIED IN PART.**