NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

DOMAIN NAME COMMISSION LIMITED,

Plaintiff-Appellee,

v.

DOMAINTOOLS, LLC,

Defendant-Appellant.

No.    18-35850

D.C. No. 2:18-cv-00874-RSL

MEMORANDUM[*]

Appeal from the United States District Court
for the Western District of Washington
Robert S. Lasnik, District Judge, Presiding

Argued and Submitted June 7, 2019
Seattle, Washington

Before:  BEA and NGUYEN, Circuit Judges, and MÁRQUEZ,[**] District Judge.

Domain Name Commission Limited ("DNCL") is a non-profit New Zealand

corporation tasked with administering New Zealand's ".nz" top-level internet

domain registry.  DomainTools is a United States company based in Washington

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]     The Honorable Rosemary Márquez, United States District Judge for the District of Arizona, sitting by designation.

state that aggregates publicly available website information collected from top-level internet domain registries like DNCL. But DNCL makes such information publicly available subject to certain terms of use, which DNCL alleges that DomainTools violated. Accordingly, DNCL sued for breach of contract and moved for a preliminary injunction, which the district court granted, causing DomainTools to file the instant interlocutory appeal.[1]

I

We review a decision granting a preliminary injunction for abuse of discretion. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). A district court abuses its discretion if its decision rests on an erroneous legal standard, or "resulted from a factual finding that was illogical, implausible, or without support in inferences that may be drawn from the facts in the record." *Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc*., 736 F.3d 1239, 1247, 1250 (9th Cir. 2013) (quoting *United States v. Hinkson*, 585 F.3d 1247, 1263 (9th Cir. 2009) (en banc)).

In considering whether the district court abused its discretion, we must examine the district court's application of the preliminary injunction standard. A party "seeking a preliminary injunction must establish that [it] is likely to succeed

---

[1] Because the parties are familiar with the rather technical facts of this appeal, we recite them only as necessary to explain our decision.

on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). But where the injunction sought is "mandatory" (as opposed to "prohibitory"), courts apply a stricter standard. A party requesting a mandatory injunction must show "that the law and facts clearly favor [its] position, not simply that [it] is likely to succeed." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (emphasis omitted).

## II

The district court did not abuse its discretion in finding that the facts and law clearly favored DNCL's position that there was mutual assent between DNCL and DomainTools to form a contract on DNCL's terms of use. DNCL conspicuously displayed its terms of use in response to each of the hundreds of thousands of information requests DomainTools submitted. There was further evidence before the district court suggesting that someone at DomainTools must have had actual knowledge of DNCL's terms of use, because DomainTools excised the terms of use appended to the information it received from DNCL before adding it to DomainTools' own database.[2] Additionally, DomainTools did not deny

---

[2] On appeal, DomainTools argues that DNCL's use of "%" symbols to preface its terms of use sent via Port 43 supports its theory that no DomainTools employee ever actually saw the terms of use, because DomainTools' programmers could

3

knowledge of the terms of use in response to DNCL's cease-and-desist letters. Accordingly, it was not illogical, implausible, or without support in the record for the district court to have concluded that the facts and law clearly supported a finding of mutual assent.

## III

The district court did not abuse its discretion in finding that the terms of use were clear enough to form the basis of a breach of contract claim. Under Washington law, even if a contract term "might be ambiguous under some factual situations," the term will be enforced if its meaning "is not at all ambiguous" under the factual circumstances under consideration. *Grange Ins. Ass'n v. MacKenzie*, 694 P.2d 1087, 1089 (Wash. 1985). A plain reading of both versions of DNCL's terms of use show that they clearly prohibited the bulk downloading of 94% of DNCL's information registry. It was therefore not illogical, implausible, or without support in the record for the district court to have concluded that the facts and law clearly supported a finding that DomainTools breached the terms of use.

## IV

have programed its computers to ignore and excise automatically any text prefaced by a "%" symbols without personally inspecting the WHOIS results. But DomainTools forfeited this specific argument on appeal by not making it before the district court in the preliminary injunction proceedings. We "will not consider arguments that are raised for the first time on appeal." *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999).

4

The district court did not abuse its discretion in finding that DNCL was likely to suffer irreparable harm in the absence of a preliminary injunction. The district court was presented with evidence that DNCL's customers care deeply about the privacy of information about themselves; that some DNCL customers ended their relationship with DNCL because of the publication of the very type of information that DomainTools obtained from DNCL (and republished in violation of DNCL's terms of use); and, that DNCL has taken steps to address its customers' demand for increased privacy. Accordingly, it was not illogical, implausible, or without support in the record for the district court to conclude that DNCL was likely to suffer irreparable harm if it was not able to enforce its terms of use designed to safeguard user privacy.

V

The district court did not abuse its discretion in finding that the public interest supported an injunction. Although the district court was presented with evidence that DomainTools' services are used by law enforcement and cybersecurity professionals to safeguard the public, there was also evidence that such professionals could access this type of information through alternate channels, and that in any case, the information DomainTools would be enjoined from publishing represents a very small fraction of DomainTools' database. On the other hand, the district court recognized that the public interest was benefited by

5

safeguarding the privacy of DNCL's users.  Accordingly, it was not illogical, implausible, or without support in the record for the district court to conclude that the public interest favored issuance of a preliminary injunction.

VI

For the foregoing reasons, the district court's preliminary injunction order is **AFFIRMED**.