**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

SKYDIVE ARIZONA, INC.,
*Plaintiff-Counter-Defendant-Appellee,*

v.

CARY QUATTROCCHI; BEN BUTLER,
*Defendants-Appellants,*

CASC, INC.; USSO, LLC, DBA
1800SkyRide, AKA
1800Skyride.com; ATLANTA SC,
INC. AKA Atlanta Skydiving
Center; IGOVINCENT, INC., a
Georgia Corporation,
*Defendants-Counter-Claimants-Appellants,*

v.

LARRY HILL,
*Third-Party-Defendant-Appellee.*

No. 10-16099

D.C. No.
2:05-CV-02656-
MHM

SKYDIVE ARIZONA, INC.,
        *Plaintiff-Counter-Defendant-*
                        *Appellant,*

            v.

CARY QUATTROCCHI; BEN BUTLER,
                *Defendants-Appellees,*

CASC, INC.; USSO, LLC, DBA
1800SkyRide, AKA
1800Skyride.com; ATLANTA SC,
INC.; IGOVINCENT, INC., a Georgia
Corporation,
        *Defendants-Counter-Claimants-*
                        *Appellees,*

            v.

LARRY HILL,
            *Third-Party-Defendant.*

No. 10-16196

D.C. No.
2:05-cv-02656-
MHM

OPINION

Appeal from the United States District Court
for the District of Arizona
Mary H. Murguia, District Judge, Presiding

Argued and Submitted
January 11, 2012—San Francisco, California

Filed March 12, 2012

Before: John T. Noonan, Jr., and Milan D. Smith, Jr.,
Circuit Judges, and Jed S. Rakoff, Senior District Judge.*

*The Honorable Jed S. Rakoff, Senior District Judge for the U.S. District Court for the Southern District of New York, sitting by designation.

Opinion by Judge Milan D. Smith, Jr.;
Partial Concurrence and Partial Dissent by Judge Noonan

**COUNSEL**

Daniel H. Brombert (argued) and Timothy A. Butler, Quinn Emanuel Urquhart & Sullivan, LLP, Redwood Shores, California, for the defendants-appellants.

Sid Leach (argued), Martha E. Gibbs, and Monica A Limon-Wynn, Snell & Wilmer, LLP, Phoenix, Arizona, for the plaintiff-appellee.

**OPINION**

M. SMITH, Circuit Judge:

Skydive Arizona owns and operates one of the largest skydiving centers in the world. Defendants Butler, Quattrocchi, Atlanta SC, Inc., CASC, Inc., and IGOVincent, Inc. (collectively, SKYRIDE) operate an Internet and telephone-based advertising service, making skydiving arrangements for customers, and issuing certificates that can be redeemed at various drop zones around the country. Skydive Arizona sued SKYRIDE for false advertising, trademark infringement and cybersquatting. Following partial summary judgment and a trial, a jury awarded Skydive Arizona $1 million in actual damages for false advertising, $2.5 million in actual damages for trademark infringement, $2,500,004 in profits resulting from the trademark infringement, and $600,000 for statutory cybersquatting damages. The district court denied SKYRIDE's motions to reduce the jury verdict, for judgment notwithstanding the verdict, for remittitur, and for a new trial, and instead doubled Skydive Arizona's $1 million actual damages award for false advertising and $2.5 million award

for trademark infringement. The final judgment totaled $600,000 in statutory damages, $7 million in enhanced actual damages, and $2,500,004 in disgorged profits, plus attorney fees. The district court also entered a permanent injunction against SKYRIDE's operations in Arizona. SKYRIDE now appeals the district court's grant of partial summary judgment, the jury's actual damages and profits awards, and the district court's damages enhancement. Skydive Arizona cross-appeals the district court's limitation of the permanent injunction to Arizona, and seeks a nationwide injunction against SKYRIDE. We have jurisdiction under 28 U.S.C. § 1291, and we affirm as to all claims, except for the doubling of actual damages.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellee Skydive Arizona, Inc., located in Eloy, Arizona, has operated under the "SKYDIVE ARIZONA" mark since 1986, and is now one of the most well known skydiving centers in the world. Skydive Arizona hosts between 145,000 and 160,000 skydives each year. It also furnishes its planes and personnel for skydiving events in 30 states outside of Arizona. Skydive Arizona is widely known in the skydiving community, and has hosted national skydiving competitions. Skydive Arizona has also been featured on multiple television programs, and advertises extensively on the Internet, as well as in national and international skydiving magazines, Phoenix-area hotels, the Yellow Pages, and in the University of Arizona's and Arizona State University's college newspapers.

SKYRIDE acts essentially as a third-party advertising and booking service for skydiving centers. As advertisers, they provide national phone and Internet promotional services to various individual drop zones, in exchange for a fee. When SKYRIDE acts as a booking agent, customers pay SKYRIDE, either online or over the phone, for a certificate that can be redeemed at various drop zones around the country. Upon

redemption, SKYRIDE is expected to pay the skydiving facility used by the customer.

As part of their advertising and booking business, SKYRIDE owned and operated numerous websites describing skydiving opportunities in multiple locations, without reference to specific drop zones. However, SKYRIDE also owned and operated numerous websites specifically referencing Arizona, including PhoenixSkydiving, ScottsdaleSkydiving, TempeSkydiving, ChandlerSkydiving, MesaSkydiving, GlendaleSkydiving, GilbertSkydiving, PeoriaSkydiving, TucsonSkydiving, YumaSkydiving, and FlagstaffSkydiving. SKYRIDE also registered numerous domain names for use in connection with the SKYRIDE business, including skydivearizona.net, arizonaskydive.com, and skydivingarizona.com. Skydive Arizona neither advertised with, nor accepted certificates from, SKYRIDE.

On August 30, 2005, Skydive Arizona filed a complaint against SKYRIDE, asserting claims of (1) False Designation or Origin and Unfair Competition, under Section 43(a) of the Lanham Act, 15 U.S.C. § 1115(a) (false advertising), (2) Trademark Infringement, under 15 U.S.C. § 1125(a) (trademark infringement), and (3) False Designation of Origin and Unfair Competition, under Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d) (cybersquatting). Skydive Arizona alleged that SKYRIDE misled consumers wishing to skydive in Arizona through false advertisements on their websites that misrepresented SKYRIDE's ownership of skydiving facilities in Arizona. In reality, SKYRIDE neither owned nor operated skydiving facilities in Arizona, but made a strategic business decision to represent ownership because they thought it would attract more customers. Skydive Arizona further claimed that SKYRIDE sold skydiving certificates by trading upon Skydive Arizona's goodwill and misleading customers into believing that Skydive Arizona would accept SKYRIDE certificates.

On February 2, 2009, the district court entered partial summary judgment in favor of Skydive Arizona for the false advertising claim under section 43(a) of the Lanham Act. On October 2, 2009, a jury found in favor of Skydive Arizona on the remaining claims. Specifically, the jury awarded $1 million in damages for willful false advertising, under section 43(a) of the Lanham Act, $2.5 million in actual damages for willful trademark infringement, along with $2,500,004 in lost profits, and statutory damages of $100,000 each for six violating domain names, under section 43(d).

In its March 31, 2010 order denying SKYRIDE's motions for a new trial, reduction of jury award, remittitur, and judgment notwithstanding the verdict, the district court doubled the actual damages awards for false advertising and trademark infringement, resulting in $5 million for trademark infringement and $2 million for false advertising. It declined to increase the award of profits.

The district court entered final judgment on April 16, 2010. Both parties timely appealed.

## STANDARD OF REVIEW AND JURISDICTION

We review summary judgment rulings *de novo*. *See, e.g.*, *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgm't.*, 618 F.3d 1025, 1031 (9th Cir. 2010).

Because of the equitable discretion that district courts exercise over monetary relief under the Lanham Act, we review such rulings for abuse of discretion. *See, e.g.*, *Rolex Watch, U.S.A., Inc. v. Michel Co.*, 179 F.3d 704, 712 (9th Cir. 1999). Correspondingly, we review orders upholding jury damages awards and denying new trials for abuse of discretion. *Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1086-87 (9th Cir. 2009). A ruling constitutes an abuse of discretion if the record contains no evidence rationally supporting the conclusion. *See, e.g.*, *Lindy Pen Co., Inc. v. Bic Pen Corp.*, 982

F.2d 1400, 1405 (9th Cir. 1993). In reviewing whether a district court abused its discretion in denying a motion for remittitur or new trial, we decide whether the jury's award was supported by reasonable inferences and assessments, based on substantial evidence in the record. *La Quinta Corp. v. Heartland Props. LLC*, 603 F.3d 327, 342 (9th Cir. 2010).

We review the scope of an injunction for abuse of discretion. *See Internet Specialties W., Inc. v. Milon-Digiorgio Enters., Inc.*, 559 F.3d 985, 993 (9th Cir. 2009).

## DISCUSSION

### I.   Partial Summary Judgment for False Advertising

**[1]** We first consider whether the district court erred in granting partial summary judgment to Skydive Arizona on its false advertising claim. There are five elements to a false advertising claim under Section 43(a) of the Lanham Act:

(1)   a false statement of fact by the defendant in a commercial advertisement about its own or another's product;

(2)   the statement actually deceived or has the tendency to deceive a substantial segment of its audience;

(3)   the deception is material, in that it is likely to influence the purchasing decision;

(4)   the defendant caused its false statement to enter interstate commerce; and

(5)   the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defen-

dant or by a lessening of the goodwill associated with its products.

15 U.S.C. § 1125(a)(1)(B); *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997). Although materiality in false advertising claims is "typically" proven through consumer surveys, nothing in the Lanham Act, nor under our precedents, requires a plaintiff to use such surveys. *Southland Sod Farms*, 108 F.3d at 1140.

On appeal, SKYRIDE disputes only the district court's materiality finding. Specifically, SKYRIDE contends that the district court erred in granting partial summary judgment to Skydive Arizona on its false advertising claims because the evidence admitted on materiality, namely the declaration of consumer James Flynn, was ambiguous. We disagree. In granting partial summary judgment to Skydive Arizona, the district court found that the Flynn declaration constituted direct evidence that SKYRIDE's statements were likely to influence consumers' purchasing decisions. In his declaration, Flynn stated that he had personally bought SKYRIDE certificates based on the SKYRIDE's online representations and advertisements that he could redeem the certificates at Skydive Arizona. Based upon Flynn's declaration, the district court held that SKYRIDE's advertisements contained material false statements indicating SKYRIDE "had skydiving facilities in the locations advertised when in fact they did not, or alternatively, that consumers could redeem [SKYRIDE's] certificates at locations where they in fact could not."

**[2]** Skydive Arizona's decision to proffer declaration testimony instead of consumer surveys to prove materiality does not undermine its motion for partial summary judgment. Although a consumer survey could also have proven materiality in this case, we decline to hold that it was the *only* way to prove materiality. Indeed, as we held in *Southland Sod*, consumer surveys tend to be most powerful when used in dealing with deceptive advertising that is "literally true but mislead-

ing." 108 F.3d at 1140. Here, Defendants' advertisements were both misleading *and false*. Flynn's declaration proved that consumers had been actually confused by SKYRIDE's websites and advertising representations. The district court's materiality finding was further supported by Skydive Arizona's evidence of numerous consumers who telephoned or came to Skydive Arizona's facility after having been deceived into believing there was an affiliation between Skydive Arizona and SKYRIDE. Accordingly, we hold that the district court did not err in finding materiality based upon Flynn's declaration, and evidence from other consumers, and we affirm the district court's grant of partial summary judgment.

## II.  Damages

The gravamen of this appeal turns on whether the district court abused its discretion in upholding, and later enhancing, Skydive Arizona's damages award. SKYRIDE contends that the district court abused its discretion with regard to damages on the following four grounds: (1) in upholding the jury's actual damages award, because Skydive Arizona did not present sufficient evidence concerning the amount of damages; (2) in upholding the jury's lost profits award, because the jury failed to deduct SKYRIDE's expenses and costs based on the "clearly erroneous" testimony of Skydive Arizona's expert; (3) in enhancing the jury's damages award to punish SKYRIDE; and (4) in upholding and enhancing the entire actual damages, lost profits, and statutory damages award, because the judgment was grossly excessive. We address each of SKYRIDE's arguments in turn, and affirm the district court on each award, except as to the enhancement of the actual damages award.

### A.  *Actual Damages*

**[3]** Under the Lanham Act, the court, "*in its discretion*," may award "(1) defendant's profits, (2) *any damages* sustained by the plaintiff, and (3) the costs of the action" for a

"violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 43(a) or (d) . . . , or a willful violation under section 43(c) . . . ." 15 U.S.C. § 1117(a) (emphasis added). The district court assesses "any damages sustained by the plaintiff" in the same manner as in tort damages: the reasonably foreseeable harms caused by the wrong. *See DSPT Int'l, Inc. v. Nahum*, 624 F.3d 1213, 1222 (9th Cir. 2010) (citing *Lindy Pen Co.*, 982 F.2d at 1407; *see also Restatement (Third) of Unfair Competition* § 36(1) (1995). In reviewing a jury's award of actual damages for intentional infringement, we accept "crude" measures of damages based upon reasonable inferences so long as those inferences are neither "inexorable . . . [nor] fanciful." *See Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 621 (9th Cir. 1993).

**[4]** In a trademark action, the nature of the proof required to support a jury award depends on the circumstances of the case and is "subject to the principles of equity." *See DSPT Int'l, Inc.*, 624 F.3d at 1223. The trier of fact must distinguish between proof of the *fact* of damages and the *amount* of damages because a mark holder is held to a lower standard in proving the exact amount of actual damages. *See La Quinta Corp.,* 603 F.3d at 342. In measuring harm to goodwill, a jury may consider a plaintiff's expenditures in building its reputation in order to estimate the harm to its reputation after a defendant's bad acts. *See Smith Corona Corp. v. Pelikan, Inc.*, 784 F. Supp. 452, 476 (M.D. Tenn. 1992) ("[I]n order to calculate damage to a corporation's goodwill due to a competitor's false advertising, one must take into account the amount of money expended by the injured corporation in the promotion of its trademark."). Upon proving causation, the plaintiff's evidentiary burden relaxes considerably. To support a jury's actual damages award, there need only be substantial evidence to permit the jury to draw *reasonable inferences* and make a *fair and reasonable assessment. La Quinta Corp.*, 603 F.3d at 342 (emphasis added).

**[5]** In awarding Skydive Arizona actual damages, the jury considered an array of customer evidence and three different financial record exhibits. In affirming the jury's award, the district court noted the significant and "voluminous" evidence concerning Skydive Arizona's "stellar business reputation," and the hundreds of thousands of dollars Skydive Arizona spent in developing and advertising its business. SKYRIDE argues that this evidence was insufficient because Skydive Arizona did not provide a specific mathematical formula for the jury to use in calculating actual harm to Skydive Arizona's goodwill. We disagree. It is true that, at closing, counsel for Skydive Arizona asked the jury to "fill in" the amount of damages that it found reasonable to compensate Skydive Arizona for its actual damages. However, counsel's comment was not an invitation for the jury to conjure the amount of damages out of the vapor. To the contrary, throughout the trial, Skydive Arizona presented to the jury ample evidence proving the original value of Skydive Arizona's goodwill and the scope and depth of SKYRIDE's harm to Skydive Arizona's reputation. Skydive Arizona began by presenting to the jury three different exhibits showing its advertising expenditures for a period of ten years (from 1997 to 2007), expenditures it made to build up the goodwill and reputation of its mark over a significant period of time. Skydive Arizona then presented to the jury multiple declarations and witness testimony proving that customers were very angry with, and blamed Skydive Arizona for, problems caused by SKYRIDE. This testimony came from a variety of witnesses located as far away as North Dakota, thereby demonstrating the geographic reach of the harm caused by SKYRIDE. Counsel also directed the jury to consider Skydive Arizona's need to undertake corrective advertising, due to the extremely harmful ramifications of SKYRIDE's misrepresentations.

**[6]** We emphasize that section 1117 "confers a wide scope of discretion upon the district judge in fashioning a remedy." *See Maier Brown Brewing Co. v. Fleischmann Distilling Corp.*, 390 F.2d 117, 121 (9th Cir. 1968). Section 1117

demands neither empirical quantification nor expert testimony to support a monetary award of actual damages; many sources can provide the requisite information upon which a reasonable jury may calculate damages. *Cf. Louis Vuitton S.A. v. Spencer Handbags Corp.*, 765 F.2d 966, 973 (2d Cir. 1985) (upholding calculation of damages based on statements made on a videotape and noting that "[r]ecovery under section 1117 is not limited to cases in which the quantum of actual damages is demonstrated"). Given our willingness to accept "crude" measures of damages in cases of intentional infringement, we hold that the jury's calculation was based upon reasonable inferences and represented a fair assessment of the damages suffered by Skydive Arizona. *Intel Corp.*, 6 F.3d at 621.

Where a district court has upheld a jury award in denying a motion for a new trial, such a ruling is "virtually unassailable." *Kode v. Carlson*, 596 F.3d 608, 612 (9th Cir. 2010). We invade the province of the jury only "if the verdict is contrary to the clear weight of the evidence, is based upon false or pernicious evidence or to prevent a miscarriage of justice." *See Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007). This is no such case. The mere fact that plausible arguments could be made that the jury's verdict is too high does not warrant reversal. *Id.* Skydive Arizona proffered evidence of the costs of building its reputation, of the widespread harm to its goodwill, and of the need for corrective advertising. Based upon that evidence, the district court found that the jury could have arrived at its damages award based upon a variety of different rationales, including the great value of Skydive Arizona's original reputation, the costly harm of SKYRIDE's customer confusion, and the geographic extent of potential customer grievances. Accordingly, we hold that the district court did not abuse its discretion in upholding the jury's award of actual damages because it was supported by reasonable inferences and assessments, based upon substantial evidence in the record.

**B.** *Disgorgement of Profits*

In reviewing an award of lost profits, we do not ask whether the substance of the evidence presented to the jury was correct or even credible; we only ascertain whether the award was based on reasonable inferences and fair assessments of the evidence in the record. *La Quinta Corp.*, 603 F.3d at 342. Questions of evidentiary admissibility and credibility are properly challenged either before or during trial. Fed. R. Civ. P. 16(c)(2)(D); *see also Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 597 (1993) (emphasizing the "gatekeeping" function of the courts in evaluating the admissibility of expert testimony). Failure to raise a *Daubert* challenge at trial causes a party to waive the right to raise objections to the substance of expert testimony post-trial. *See Marbled Murrelet v. Babbitt*, 83 F.3d 1060, 1067 (9th Cir. 1996) ("[T]he appropriate time to raise *Daubert* challenges is at trial. By failing to object to evidence at trial and request a ruling on such an objection, a party waives the right to raise admissibility issues on appeal.").

In support of its request for damages, Skydive Arizona proffered the testimony of its damages and rebuttal expert, Mr. Gary Freed. In his lost profits analysis, Freed estimated SKYRIDE's revenues from Arizona by calculating the number of Arizona residents identified in SKYRIDE's records and then increasing that number by 2.131 to account for files missing residence information. He then multiplied that number by an average transaction amount, and then adjusted for resulting revenue from out-of-state residents who also jumped in Arizona. Lastly, Freed added an interest factor of 10%, using the prejudgment interest rate applicable under Arizona law. Freed also rebutted the testimony of SKYRIDE's damages expert, Lillian DeJesus, who opined on alleged deductions to SKYRIDE's profits. At no point before or during the trial did SKYRIDE challenge the admissibility of Freed's testimony under Federal Rule of Evidence 702.

SKYRIDE now contends that the district court abused its discretion in upholding the jury's award of $2,500,004 in lost profits because the award was based on erroneous calculations by Freed. Specifically, SKYRIDE alleges that Freed's calculations were clearly erroneous because he did not properly deduct vendor payments or overhead costs, and he applied an improper interest rate. When SKYRIDE first raised these arguments post-trial, the district court rejected them on the grounds that they were untimely, and fell within the province of a *Daubert* challenge. We agree with the district court. SKYRIDE's claims challenging the jury's lost profits award all turn upon on the substance and credibility of Freed's testimony; they fail to assert any basis for challenging the lost profits award based upon the record *as it exists*. Accordingly, we hold that the district court did not abuse its discretion in upholding the jury's lost profits award because SKYRIDE's waived its ability to challenge the substance of Freed's testimony by failing to object before, or at, trial.

## C. *Damages Enhancement*

**[7]** The plain language of the Lanham Act permits a district court, in its discretion, to enter judgment "for any sum above the amount found as actual damages, not exceeding three times such amount." 15 U.S.C. § 1117(a). "If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. *Such sum in either of the above circumstances shall constitute compensation and not a penalty*." *Id.* (emphasis added). Thus, although a judge or jury may award up to triple the amount of lost profits, actual damages and costs to compensate a mark holder, the Lanham Act has been construed to expressly forbid the award of damages to punish an infringer. *Id.*; *BASF Corp. v. Old World Trading Co.,* 41 F.3d 1081, 1096 (7th Cir. 1994).

The inquiry before us is not whether SKYRIDE's willful infringement justified the district court's enhancement of Sky-

dive Arizona's actual damages. Rather, we must decide whether the district court abused its discretion in enhancing Skydive Arizona's actual damages to punish SKYRIDE. In a Lanham Act case, to penalize defendants for "opprobrious conduct" is an abuse of discretion. *Jurgens v. McKasy*, 927 F.2d 1552, 1564 (Fed. Cir. 1991) (finding the district court abused its discretion under the Lanham Act when it cited both deterrence and penalizing rationales for trebling damages against a willful infringer). Indeed, "enhancement [of damages] is only available to ensure that the plaintiff receives compensation." *BASF Corp.,* 41 F.3d at 1096.

**[8]** In doubling the actual damages, as well as SKYRIDE's actual profits, the district court "emphasize[d] the purposefully deceitful nature of Defendants' conduct." The district court's focus on SKYRIDE's "seeming disregard for the people they harmed and the reputation they sullied" suggests that it enhanced the actual damages award in response to SKYRIDE's base willfulness. *See Skydive Arizona, Inc. v. Quattrocchi, et al.*, No. 2:05-cv-02656-DGC, at 21 (D. Ariz. Mar. 31, 2010). Instead of discussing the appropriate award to compensate Skydive Arizona or to deter SKYRIDE, the district court focused on the need for SKYRIDE to "appreciate" and "accept the wrongfulness of their conduct." *Id.* Although the district court may have considered a secondary deterrent rationale when it briefly discussed SKYRIDE's knowing refusal to cease its infringing acts, we hold that such possible considerations do not overcome the district court's apparent intent to punish. *See Jurgens*, 927 F.2d at 1564 (Fed. Cir. 1991). The broader context of the court's enhancement discussion reveals its punitive motivation. Accordingly, because the district court's decision to enhance the damages award hinged upon punishing the willful conduct of SKYRIDE, we reverse the district court's actual damages enhancement.

## D.    *"Grossly Excessive" Damages and Profits*

A verdict based on the bias, passion, or sympathy of the jury cannot be permitted to stand. *Plumbers & Steamfitters*

*Union, Local No. 598 v. Dillon*, 255 F.2d 820, 824 (9th Cir. 1958) (citing *Ford Motor Co. v. Mahone*, 205 F.2d 267 (4th Cir. 1953); *S. Pac. Co. v. Guthrie*, 186 F.2d 926 (9th Cir. 1951)); *see also Baldwin v. Warwick*, 213 F.3d 485 (9th Cir. 1954). Beyond obvious bias or passion, a verdict will also not be sustained on appeal if it is "grossly excessive" or "monstrous." *Id.* However, in assessing whether a damages award is grossly excessive, "[t]he fact that the jury may have agreed with [the plaintiff's expert] and rejected the defendant's contentions . . . does not render the verdict 'grossly excessive or monstrous.' " *Hemmings v. Tidyman's, Inc.*, 285 F.3d 1174, 1191 (9th Cir. 2002).

**[9]** SKYRIDE contends that the entire judgment (actual damages, profits, and the statutory damages award for cyber-squatting) should be vacated because it is grossly excessive and punitive. We disagree. SKYRIDE claims that because "SKYRIDE is not a big company" and because its nationwide gross revenues since 2003 are "only $23 million" that it should not be held accountable for a final damages award of over $10 million. SKYRIDE fails to present us with any authority, however, allowing a defendant to escape liability for trademark infringement and false advertising damages by claiming, essentially, that it is too small to justify such a large award. To that end, SKYRIDE's authority is completely inapposite. *Plumbers & Steamfitters Union* involved a breach of contract claim against a labor union in which the jury relied upon conspiracy evidence to award excessive damages against a defendant who had only been in business for three months. 255 F.2d at 824. *Baldwin* involved a conspiracy to defraud a plaintiff by drugging him while he was gambling to induce losses. 213 F.3d at 485.

**[10]** Here, SKYRIDE argues that the damages award is grossly excessive because, given SKYRIDE's small size and gross revenues, the jury could have only been motivated by a desire to punish or unbridled speculation. We rejected the same type of argument in *Hemmings*, in which appellant

claimed that a new trial should be granted because "the size of the damages awards meant that the jury must have been motivated by sympathy or sheer guesswork." 285 F.3d at 1191. SKYRIDE is a national advertising and booking service that has operated for years using a plethora of websites and domain names, a portion of which directly targeted customers in Arizona. They fail to persuade us that the size of the damages award, in relation to the size and revenue of the company, proves that the jury's damages award was objectively excessive or shocking to the conscience. Moreover, as was the case in *Hemmings*, SKYRIDE's attacks on Skydive Arizona's experts and evidence do not demonstrate that a jury's damages award was grossly excessive. Accordingly, we hold that the district court did not abuse its discretion in denying SKYRIDE's motion for a new trial.

## III.   Permanent Injunction Cross-Appeal

An injunction should be "tailored to eliminate only the specific harm alleged," *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1297 (9th Cir. 1992), but it should not be "so narrow as to invite easy evasion." *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 193 (1949). Courts should not enjoin conduct that has not been found to violate any law. *See, e.g.*, *Penthouse Int'l, Ltd v. Barnes*, 792 F.2d 943, 950 (9th Cir. 1986). Injunctive relief under the Lanham Act must be narrowly tailored to the scope of the issues tried in the case. *See Starter Corp. v. Converse, Inc.*, 170 F.3d 286, 190 (2d Cir. 1999) (further tailoring an original injunction issued by a district court under the Lanham Act where it "went beyond the scope of issues tried in the case").

**[11]** On cross-appeal, Skydive Arizona contends that the district court abused its discretion by failing to issue a nationwide injunction prohibiting SKYRIDE from "falsely stating that they own or operate skydiving centers *anywhere* in the United States where they do not in fact own or operate such centers." The district court denied the motion for a nationwide

injunction because Skydive Arizona failed to prove that SKY-RIDE's conduct outside Arizona was illegal. We agree with the district court, and hold that it did not abuse its discretion by refusing to award a nationwide injunction. In limiting the scope of the injunction to Arizona, the district court complied with our precedent that an injunction must be "tailored to eliminate only the specific harm alleged." *E. & J. Gallo Winery*, 317 F.2d at 1297. Accordingly, we affirm the district court's limitation of the permanent injunction to Arizona.

## CONCLUSION

**[12]** For the foregoing reasons, we reverse with regard to the district court's doubling of actual damages, and reinstate the jury's original actual damages award of $1 million for false advertising, and $2.5 million for trademark infringement. We affirm the district court on all other claims. Thus, as modified by our opinion, Skydive Arizona is awarded $1 million in actual damages for false advertising, $2.5 million in actual damages for trademark infringement, $2,500,004 in lost profits for trademark infringement, and $600,000 in statutory damages for cybersquatting.

Each party shall bear its own costs on appeal.

### AFFIRMED IN PART and MODIFIED IN PART.

NOONAN, Circuit Judge, concurring and dissenting:

I concur in the opinion of the court except as to some damages. On this appeal, we review a record on which the district court looked at actual damages using primarily a standard intended to measure injury to the reputation of persons rather than injury to the goodwill of a business. Goodwill is difficult to quantify but is regularly assessed by accountants in the course of the purchase of a business. It is neither as nebulous

nor as fragile as personal reputation. In reviewing the damages under section 912 of the *Restatement of Torts, Second*, the district court erred as a matter of law.

For accounting purposes, goodwill is typically the difference between the fair market value of the company and its underlying assets and liabilities. *See, e.g., Memorial, Inc. v. Harris*, 655 F.2d 905, 910 (9th Cir. 1980) (East, J.). This accounting calculation is difficult since Skydive Arizona is not a publicly traded company. Nonetheless, there are a variety of methods that might be employed in calculating goodwill and the harm to that asset caused by the Defendants. *See* Robert F. Reilly, *SFAS Nos. 141 and 142 Implications for Goodwill Acquired by M&A*, 25-FEB Am. Bankr. Inst. J. 48 (2006).

As to the components of the actual damages, "the hundreds of thousands of dollars" spent by Skydive Arizona on advertising are relevant in considering the value of its goodwill, but do nothing to establish the actual damage to that goodwill. They do not measure harm. The profits of the Defendants are also not a measure of the plaintiff's actual damages. The business done by Skydive Arizona is relevant. Its own figures showed no dimunition in dives sold. Nothing in fact in the record supports the jury's assessment of these damages as amounting to $2,500,000. The district court needed to determine them by evidence. *See Lindy Pen Co., Inc. v. Bic Pen Corp.*, 982 F.2d 1400, 1404-05 (9th Cir. 1993) (Roll, J.)