**HERB REED ENTERPRISES, INC. and Herb Reed Enterprises, LLC, Plaintiffs,**

v.

**MONROE POWELL'S PLATTERS, LLC; Monroe Powell; and Don Gloude, Defendants.**

**No. 2:11-CV–02010–PMP–RJJ.**

United States District Court, D. Nevada.

. Signed June 17, 2014.

See also 736 F.3d 1239, 173 F.3d 736, and 2011 WL 220221.

John L. Krieger, Gordon Silver, Stephanie Buntin, Lewis and Roca LLP, Las Vegas, NV, Eric M. Sommers, Sommers Law, PLLC, Portsmouth, NH, for Plaintiffs.

Erik Fitting, Erik Fitting & Associates, Ltd., Henderson, NV, for Defendants.

Don Gloude, Las Vegas, NV, pro se.

## ORDER AND PERMANENT INJUNCTION

PHILIP M. PRO, District Judge.

Presently before the Court is Plaintiffs' Motion for Summary Judgment (Doc. # 135), filed on August 12, 2013. Defendants Monroe Powell; Monroe Powell's Platters, LLC; and Don Gloude filed an Opposition (Doc. # 141) on September 4, 2013. Plaintiffs filed a Reply (Doc. # 152) on September 20, 2013.

## I. BACKGROUND

The parties are familiar with the facts of this case, and the Court set forth the factual background in a prior Order (Doc.

# 26). Some of the tortured history of the various lawsuits over the rights to the name THE PLATTERS also has been detailed in *Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d 1239, 1240–45 (9th Cir.2013). The Court therefore will not repeat the facts unless necessary for resolution of the currently pending Motion for Summary Judgment.

Plaintiffs move for summary judgment on their claims for statutory and common law trademark infringement, unfair competition, and false representation of origin. Plaintiffs contend that the default judgment entered against Defendant Monroe Powell ("Powell"), Defendants' admissions, and the evidence properly before the Court establish that Plaintiffs' rights in the marks THE PLATTERS and HERB REED AND THE PLATTERS are superior to Defendants', and Defendants' use of the mark THE PLATTERS without indicating that Powell's performances are a "tribute" or "salute to" the original Platters creates a likelihood of confusion among consumers. Plaintiffs contend they have been damaged as a result, and are entitled to recovery of Defendants' profits from live performances in the United States and Australia. Plaintiffs also request treble damages and a permanent injunction.

Defendants respond by contesting that Plaintiffs have standing to assert their claims based on assignments from Herb Reed ("Reed") to Plaintiffs. Defendants argue the assignments are signed by a rubber stamp signature and Plaintiffs have not established Reed actually authorized the assignments through his stamped signature. Defendants also argue the default judgment Plaintiffs obtained in *Herb Reed Enterprises, Inc. v. Bennett ("Reed v. Bennett")*, 2:10–CV–01981–JCM–RJJ is not binding on Defendants because at the time Reed sued Jean Bennett ("Bennett"), Bennett already had transferred her rights to Live Gold of Queens, New York. Defendants argue that even if Bennett still owned the rights at issue, Powell and Live Gold of Queens, New York ("Live Gold") were indispensable parties because their rights to use the mark would be affected by the litigation. Defendants further contend that Plaintiffs previously have sought through litigation to obtain exclusive rights to the mark THE PLATTERS, but Plaintiffs lost those cases, and Plaintiffs should not be permitted to re-litigate the issue. Defendants assert that the issue of whose rights are superior is resolved by determining which person used the mark continuously in commerce for the longest period of time. Defendants contend that person is Powell, not Reed, because Reed abandoned use of the mark when he resigned from the Platters and spent several years performing with another group.

As to likelihood of confusion, Defendants argue that they do not seek to use the mark THE PLATTERS. Rather, Defendants contend they use the mark THE PLATTERS FEATURING MONROE POWELL, as they are entitled to do pursuant to a stipulation in a prior litigation with non-party Five Platters, Inc. ("FPI"). Defendants dispute that Reed has the right to use the mark THE PLATTERS after his registered trademark was cancelled as a result of separate litigation. Defendants thus contend the proper inquiry is whether Defendants' use of the mark THE PLATTERS FEATURING MONROE POWELL infringes on Plaintiffs' registered mark, HERB REED AND THE PLATTERS. Defendants contend that based on the various factors, there is no likelihood of confusion. Defendants assert there consequently is no basis for a permanent injunction barring Defendants from using the mark THE PLATTERS FEATURING MONROE POWELL.

As to damages, Defendants argue that even if Plaintiffs were entitled to damages, Plaintiffs did not obtain final judgment in *Reed v. Bennett* until October 4, 2011, and thus did not obtain the mark THE PLATTERS until that date. Defendants contend Plaintiffs should not be allowed damages prior to that time. Additionally, Defendants dispute that Plaintiffs are entitled to any damages based on performances in foreign countries. Defendants contend the Court already denied Plaintiffs' request for sanctions related to the foreign performances because the Court concluded it did not have jurisdiction over the foreign conduct, and the Court should not revisit the issue.

After Defendants filed their Opposition, this Court struck Defendant Powell's Answer and entered a default judgment against him based on various discovery violations. (Order (Doc. # 149); J. (Doc. # 150).) Additionally, the parties entered into a Stipulation pursuant to which Defendants withdrew certain paragraphs from the declarations attached to their Opposition to Plaintiffs' summary judgment motion, and Defendants also withdrew any statements of fact in the Opposition based on the withdrawn evidence. (Stip. to Withdraw Certain Portions of Defs.' Opp'n to Pls.' Mot. Summ. J. & Extend Time to File Reply (Doc. # 151).)

## II. DISCUSSION

Summary judgment is appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(a), (c). A fact is "material" if it might affect the outcome of a suit, as determined by the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is "genuine" if sufficient evidence exists such that a reasonable fact finder could find for the non-moving party. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). Initially, the moving party bears the burden of proving there is no genuine issue of material fact. *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002). If the moving party meets its burden, the burden shifts to the non-moving party to produce evidence that a genuine issue of material fact remains for trial. *Id.* The Court views all evidence in the light most favorable to the non-moving party. *Id.*

■ Plaintiffs bring three claims under the Lanham Act, 15 U.S.C. § 1125, for trademark infringement, unfair competition, and false designation of origin. The Lanham Act "prohibits the use of false designations of origin, false descriptions, and false representations in the advertizing and sale of goods and services." *Jack Russell Terrier Network of N. Ca. v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1036 (9th Cir.2005). Pursuant to the Lanham Act, any person who believes he has been damaged may bring a civil action against:

[a]ny person who, on or in connection with any goods or services ... uses in commerce ... any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's

goods, services, or commercial activities. . . .

15 U.S.C. § 1125(a). Although Plaintiffs bring three different claims, under the facts of this case, all of their claims require proof of the same elements: (1) that Plaintiffs have valid, protectable ownership interests in a mark, and (2) that Defendants' use of the mark is likely to cause confusion. *See Applied Info. Scis. Corp. v. eBay, Inc.,* 511 F.3d 966, 969 (9th Cir. 2007); *Murray v. Cable Nat'l Broad. Co.,* 86 F.3d 858, 860 (9th Cir.1996).

### A. Ownership

██ Plaintiffs registered the mark HERB REED AND THE PLATTERS with the United States Patent and Trademark Office on December 23, 2003.[1] (Decl. of Frederick J. Balboni, Jr. in Support of Pls.' Mot. Summ. J. (Doc. # 137) ["Balboni Decl."], Ex. 2.) Registration of a mark on the Patent and Trademark Office's Principal Register "constitutes prima facie evidence of the validity of the registered mark and of [the registrant's] exclusive right to use the mark on the goods and services specified in the registration." *Applied Info. Scis. Corp.,* 511 F.3d at 970 (quotation omitted). Plaintiffs do not have a registered mark in THE PLATTERS, but Plaintiffs assert common law rights in THE PLATTERS mark.

Two issues arise as to Plaintiffs' ownership in the marks. First, Defendants argue Plaintiffs do not own either mark because Reed never transferred his interests to Plaintiffs, and thus Plaintiffs lack standing to pursue their claims. Second, Defendants argue that even if the assignments are legitimate, Plaintiffs have a valid interest in the registered mark HERB REED AND THE PLATTERS, but Plaintiffs do not have valid common law interests in the mark THE PLATTERS. Plaintiffs respond by arguing the assignments are legitimate and Plaintiffs have valid interests in both marks that are superior to any interests Defendants may have in the mark THE PLATTERS.

#### 1. Signature on Assignments

██ Defendants question whether Reed, who now is deceased, actually signed the assignments purporting to assign Reed's rights and interests in the marks to Plaintiffs because the documents are signed by a rubber stamp signature. Defendants contend Plaintiffs have not authenticated Reed's signature because Plaintiffs have presented no evidence that anyone witnessed Reed place the stamped signature on the assignments. Plaintiffs respond by arguing the signature is Reed's and has been authenticated through the declaration of Frederick J. Balboni ("Balboni").

On September 17, 2007, Reed assigned the registered mark HERB REED AND THE PLATTERS to Plaintiff Herb Reed Enterprises, Inc. (Balboni Decl., Ex. 2.) On October 18, 2010, Herb Reed Enterprises, Inc. assigned the registered mark to Plaintiff Herb Reed Enterprises, LLC. (*Id.*) The assignments of the registered mark are based on two assignments of all rights Reed had in the marks HERB REED AND THE PLATTERS and THE PLATTERS, along with the right to recover for any past infringement of the marks. (Balboni Decl., Ex. 3.) Both assignments bear Reed's signature by means of a rubber stamp. (Balboni Decl. at 2–3.) Balboni avers the stamp was created at Reed's request when writing became more difficult for Reed. (*Id.* at 3.) Balboni states Reed desired to make the assignments,

---

1. Although Plaintiffs have a registered mark, Plaintiffs do not bring a trademark infringement claim under 15 U.S.C. § 1114.

that Balboni "helped make sure those documents were created and properly executed," and that the signatures on the assignments are Reed's. (*Id.* at 2.) Balboni also denies any suggestion that Reed was not competent at the time the assignments were executed. (*Id.*)

Defendants have presented no evidence that the signatures on the assignments are not Reed's. Although Defendants suggest Reed did not actually authorize the transfers, or was incompetent to do so, and that Balboni's statements should not be credited, Defendants present no admissible evidence in support of any of these contentions. Plaintiffs have presented sufficient evidence that the assignments are what they purport to be. Fed.R.Evid. 901(a), (b)(1). As a result, no genuine issue of material fact remains that the assignments are legitimate assignments of whatever rights Reed had in the two marks.

### 2. The Mark THE PLATTERS

Defendants concede that if the assignments are legitimate, Plaintiffs have valid interests in the registered mark HERB REED AND THE PLATTERS. However, Defendants contend that Plaintiffs do not have valid common law interests in the mark THE PLATTERS. Defendants contend Reed was not an original member of the singing group as he claimed, that Reed's registered mark for THE PLATTERS was cancelled through prior litigation, and Reed abandoned whatever rights he had when he resigned from the group in 1969 and started another group that went by a different name. Defendants also argue the default judgment Plaintiffs obtained in *Reed v. Bennett* is not binding on Defendants because they were necessary parties who were not joined in the action. Defendants also assert Live Gold was an indispensable party because Bennett transferred her rights in FPI to Live

Gold prior to the *Reed v. Bennett* lawsuit being filed.

Plaintiffs respond that Defendants, through default and admissions, have admitted Plaintiffs have superior rights in the mark THE PLATTERS, and Defendants cannot now present evidence to the contrary. Plaintiffs also argue that Defendants claim rights to the mark through FPI, but have presented no admissible evidence that FPI had legitimate rights to the mark. Plaintiffs further contend Defendants and Live Gold were not necessary parties to the *Reed v. Bennett* case because Defendants have presented no evidence they were anything other than nonexclusive licensees of the mark, and Defendants have presented no admissible evidence Bennett transferred her rights to Live Gold. Finally, Plaintiffs argue there is no evidence Reed abandoned use of THE PLATTERS mark and, in any event, Reed's continuous receipt of royalties from The Platters recordings demonstrates he never abandoned use of the mark.

■ To establish standing to sue for their Lanham Act claims, Plaintiffs must show they own a federal mark registration, own an unregistered mark, or are nonowners with "a cognizable interest in the allegedly infringed trademark." *Halicki Films, LLC v. Sanderson Sales & Mktg.*, 547 F.3d 1213, 1225 (9th Cir.2008). Because Plaintiffs do not own a federal mark registration for the mark THE PLATTERS, Plaintiffs must establish they have common law rights in the mark. *Applied Info. Scis. Corp.*, 511 F.3d at 970.

Defendants have admitted the following facts:

- Reed was an original member of the vocal group The Platters when the group began performing before 1954.

- Reed is referred to as one of the "original" Platters.

- Powell never was assigned rights in the mark THE PLATTERS by any members of the original Platters.
- No person or entity ever has assigned rights in the mark THE PLATTERS to Defendants Powell or Monroe Powell's Platters, LLC.
- Plaintiffs' rights in the mark THE PLATTERS are superior to those of Powell.

(Decl. of Eric M. Sommers in Support of Pls.' Mot. Summ. J. (Doc. #136) ["Sommers Decl."], Ex. 1); Order (Doc. #74). Other courts have held that Reed, "who founded the group and is the only person who has remained and performed with it from its inception, retains the right to use the service mark" THE PLATTERS to the exclusion of various other individuals who have attempted to use the mark. *See Robi v. Reed,* 173 F.3d 736, 740 (9th Cir. 1999); *Reed v. Bennett,* 2:10–CV–01981–JCM–RJJ, Default J. & P.I. (Doc. #60) (entering a declaratory default judgment that Reed "having first used the mark 'The Platters' in commerce in 1953, and having continuously used the mark in commerce since then has superior rights to the mark to all others, including Five Platters, Inc. and Personality Productions, Inc., and anyone claiming rights from or through them"); *see also Herb Reed, Enters., LLC v. Fla. Entm't Mgmt.,* 2012 WL 3020039, No. 2:12–CV–00560–MMD–GWF, at *11 (D.Nev. July 24, 2012), *reversed on other grounds by* 736 F.3d 1239 (9th Cir.2013) (finding Herb Reed Enterprises showed a likelihood of success on the merits on a motion for preliminary injunction because Reed had rights in the name THE PLAT-

TERS superior to Larry Marshak and his company, Florida Entertainment Management, Inc.).

 No genuine issue of material fact remains that Plaintiffs own interests in the mark THE PLATTERS and that those interests are superior to Defendants' interests. Defendants have admitted that no one has assigned an interest in the mark THE PLATTERS to Defendants, and that Plaintiffs' rights in the mark are superior. In addition to these admissions, Plaintiffs have obtained various judgments setting forth their interests in the mark based on Reed's association with the original Platters and his continuous use of the mark. Defendants argue the Court should disregard the *Reed v. Bennett* case because Live Gold owned FPI's rights prior to the default judgment, and thus was a necessary party, but Defendants present no evidence to that effect. Defendants contend they also were necessary parties in *Reed v. Bennett* because their rights would have been impacted by the litigation, but Defendants have admitted in this case that Plaintiffs' rights are superior to Defendants' rights in the mark THE PLATTERS. Defendants' lack of participation in the prior litigation therefore is inconsequential. Based on the evidence before the Court, Plaintiffs have established they have common law ownership interests in the mark THE PLATTERS.[2]

**B. Likelihood of Confusion**

 In determining whether there is a likelihood of confusion, the Court considers the following factors:

---

**2.** Additionally, Defendant Powell has been defaulted, and thus as to Defendant Powell, the Court takes as true all well-pleaded factual allegations in the Complaint. *DIRECTV, Inc. v. Hoa Huynh,* 503 F.3d 847, 854 (9th Cir. 2007). The Complaint in this matter contains factual allegations regarding Reed's associa- tion with the Platters singing group from 1954 onward, and that he has used the mark continuously since 1953. (Compl. at ¶¶ 10–29.) Plaintiffs' ownership interests thus also are established through the default judgment as to Defendant Powell.

(1) strength of the mark;[ ](2) proximity or relatedness of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels; (6) type of goods and degree of purchaser care; (7) intent in selecting mark; and (8) likelihood of expansion.

*Walter v. Mattel, Inc.*, 210 F.3d 1108, 1111 (9th Cir.2000) (footnote omitted) (citing *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir.1979), *abrogated on other grounds by Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 810 n. 19 (9th Cir.2003)). These factors are not necessarily of equal importance nor will all necessarily apply in every case. *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1008 (9th Cir.2001). The inquiry is factual in nature, and summary judgment therefore is not appropriate when a jury reasonably could conclude there is, or is not, a likelihood of confusion. *Id.* at 1007–08.

### 1. Strength of the Mark

 The Platters charted several number one hits in the 1950s and 1960s, have several gold records, and attained international fame. (Sommers Decl., Ex. 1.) The Platters recordings are used in television programs and movies, and recordings of the original Platters are still being sold. (*Id.*) The Platters have been inducted into the Rock & Roll Hall of Fame, the Vocal Group Hall of Fame, and the Grammy Hall of Fame. (*Id.*) The Platters, and the mark THE PLATTERS, are nationally and internationally famous. (*Id.;* Sommers Decl., Ex. 3 at 80.) The mark THE PLATTERS is strong, and this factor weighs in favor of finding a likelihood of confusion.

### 2. Proximity or Relatedness of Good

Powell provides live vocal performances of The Platters' original hits and in the original Platters' style in connection with his use of the mark THE PLATTERS FEATURING MONROE POWELL. (Sommers Decl., Ex. 1.) Plaintiffs' vocal group likewise performs in the United States and in foreign countries. (Balboni Decl. at 5.) The parties therefore are providing related services in the form of live vocal performances, and this factor weighs in favor of finding a likelihood of confusion.

### 3. Similarity of Marks

Defendants use the mark THE PLATTERS FEATURING MONROE POWELL or some variation thereof. (Balboni Decl., Ex. 5.) When used in advertising, the words "The Platters" are displayed prominently and sometimes in much larger font than the words "featuring Monroe Powell." (Balboni Decl., Exs. 5–9.) Defendants use the mark THE PLATTERS in its entirety, and use a mark similar to HERB REED AND THE PLATTERS, with the only differentiation being the individual names. Defendants admit that they use "The Platters" in their mark because the name "The Platters" has "value," and Powell would not get booked to perform without using the name The Platters. (Sommers Decl., Ex. 2 at 61, Ex. 3 at 79–80.) This factor weighs strongly in favor of finding a likelihood of confusion.

### 4. Evidence of Actual Confusion

According to Balboni, he has been approached about booking shows for Plaintiffs' vocal group in South America and the Far East, but "because other groups are wrongfully designating themselves as 'The Platters,'" the promoters from these locations have advised Balboni that "they will not book [Plaintiffs'] group until the others are properly designat[ed] as tribute bands." (Balboni Decl. at 5.) Thus, there is some evidence that venues are confused about who is appropriately calling themselves The Platters. Additionally, Defendants admit they would not obtain bookings without using The Platters name.

Further, Defendants represented earlier in this litigation that if Defendants changed Powell's group's name to include "Tribute" or "Revue," venues could not charge as much for tickets. (Defs.' Opp'n to Mot. for T.R.O. (Doc. # 17), Decl. of Don Gloude ¶ 14; *see also* Decl. of Jon Bauman in Support of Pls.' Mot. Summ. J. (explaining that a group other than the original musical group should designate itself as a "tribute" or "salute" to the original group to make clear it is not the original group).) That venues charge, and thus consumers pay, higher ticket prices to see "The Platters featuring Monroe Powell" without indicating it is a tribute or revue of the original Platters group indicates a likelihood that consumers believe Powell's group includes original members of The Platters, which it does not. This factor weighs in favor of finding a likelihood of confusion.

### 5. Marketing Channels

Plaintiffs and Defendants advertise their live vocal performances on the Internet. (Balboni Decl. at 4–5.) Additionally, Plaintiffs and Defendants book live performances nationally and internationally through booking agents. (*Id.*) The parties therefore utilize similar marketing channels, and this factor weighs in favor of finding a likelihood of confusion.

### 6. Type of Goods and Degree of Purchaser Care

Neither party presents any evidence regarding consumer care. Plaintiffs argue that because it is the group that is famous, not the individual group members, consumers will make purchasing decisions based on the group name The Platters. Plaintiffs thus argue consumers will not distinguish between two groups calling themselves The Platters. Plaintiffs have not presented any evidence on this point, however. As discussed above, Plaintiffs have presented evidence that venues who

book the groups are confused and may charge consumers a higher ticket price for an original singing group as opposed to a tribute band. However, Plaintiffs have presented no independent evidence of consumer confusion, and thus this factor is neutral or weighs only slightly in favor of finding a likelihood of confusion.

### 7. Intent in Selecting the Mark

Powell chose to use the words "The Platters" in his mark because the name "had value." (Sommers Decl., Ex. 2 at 61.) Gloude indicated Powell would not get booked to perform without using the name The Platters. (Sommers Decl., Ex. 3 at 79–80.) Defendants thus intended to make use of the mark due to its fame and recognition in relation to live vocal performances. This factor weighs in favor of finding a likelihood of confusion.

### 8. Likelihood of Expansion

Neither party presents any evidence on this factor. This factor is neutral.

### 9. Summary

Plaintiffs own rights in the marks THE PLATTERS and HERB REED AND THE PLATTERS which are superior to Defendants' rights. Defendants nevertheless intentionally have used the famous mark THE PLATTERS because it has value and Defendants could not have obtained bookings without it. Defendants and Plaintiffs market similar live vocal performances in similar marketing channels in similar venues. Venues either have either charged higher prices for performances they believed were by the original group, as opposed to a tribute band, or have expressed an unwillingness to book a group until it has been established which group properly may call itself The Platters. As all factors are either neutral or weigh in favor of a likelihood of confusion, no genuine issue of material fact remains

that Defendants' use of the mark is likely to cause confusion.

## C. Remedies

### 1. Permanent Injunction

Plaintiffs assert they are entitled to a permanent injunction requiring Defendants to cease infringing on Plaintiffs' marks. Plaintiffs do not request an outright ban on Defendants' use of the mark, however. Plaintiffs request only that Defendants must identify themselves as a "tribute" or "salute" to The Platters, and the font size of all words must be approximately equivalent in any advertising. Defendants do not respond other than to argue Plaintiffs do not own the mark THE PLATTERS, and therefore Plaintiffs are not entitled to an injunction.

■■■■ Pursuant to the Lanham Act, the Court has the "power to grant injunctions, according to the principles of equity and upon such terms as the Court may deem reasonable, to prevent the violation" of Plaintiffs' rights. 15 U.S.C. § 1116(a); *see also Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180–81 (9th Cir. 1988) (describing injunctive relief as "the remedy of choice for trademark and unfair competition cases" because the plaintiff lacks an adequate remedy at law). "According to well-established principles of equity, a plaintiff seeking a permanent injunction ... must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006). If the Court grants an injunction, it should tailor the injunction "to eliminate only the specific harm alleged," while not making the injunction "so narrow as to invite easy evasion." *Skydive Arizona, Inc. v. Quattrocchi*, 673 F.3d 1105, 1116 (9th Cir.2012) (quotations omitted). Whether to grant or deny an injunction lies within the Court's discretion. *eBay Inc.*, 547 U.S. at 391, 126 S.Ct. 1837.

■■■■ Plaintiffs have established they have suffered irreparable injury from Defendants' use of the mark THE PLATTERS. Defendants used the mark for the purpose of booking live vocal performances based on the fame attained by The Platters. Defendants' and others' use of the mark has created confusion in the marketplace over who is entitled to use the mark, impacting Plaintiffs' ability to book their own live performances. Monetary damages are inadequate to compensate for this marketplace confusion. Considering the balance of hardships between Plaintiffs and Defendants, a permanent injunction is warranted because Defendants have admitted Plaintiffs' rights are superior, Defendants offer no argument opposing an injunction except their argument that Plaintiffs should not prevail on the merits, and the injunction Plaintiffs request is narrowly tailored to permit Defendants to use the mark THE PLATTERS so long as Defendants indicate the show is a "tribute" or "salute" to The Platters. Finally, the public interest would be served by the injunction because it would enable the consuming public to distinguish between groups claiming to be The Platters. The Court therefore will grant Plaintiffs' request for permanent injunctive relief.

### 2. Damages

Plaintiffs request as damages Defendants' sales both domestically and in foreign countries, and treble damages based on Defendants' willful use of the mark.

Defendants respond that if Plaintiffs are entitled to damages, those damages should run from October 4, 2011, when Plaintiffs obtained the default in *Reed v. Bennett*, because that is when Plaintiffs obtained the mark THE PLATTERS. Defendants also argue Plaintiffs are not entitled to damages related to performances in foreign countries because this Court already resolved that issue against Plaintiffs.

### a. Date From Which Profits to be Awarded and Treble Damages

Under the Lanham Act, the Court may award Defendants' profits, Plaintiffs' damages, and costs. 15 U.S.C. § 1117(a). "In assessing profits, the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." *Id.* Additionally, the Court, in its discretion, may adjust the amount awarded if the Court finds "the amount of the recovery based on profits is either inadequate or excessive, and may "enter judgment for such sum as the court shall find to be just, according to the circumstances of the case." *Id.*

█ Plaintiffs have presented evidence of Defendants' domestic sales in the amount of $299,601.45 dating from January 2008. (Sommers Decl., Exs. 4–6.) Defendants have not disputed this evidence, and have offered no evidence of any deductions. However, the Court, in its discretion, finds that awarding $299,601.45 for Defendants' sales would be excessive under the circumstances of this case. There has been extensive litigation over the rights to use the mark THE PLATTERS for decades, and despite the many lawsuits, the question of who may use the mark and under what circumstances has remained unclear. Only with Plaintiffs' default judgment in *Reed v. Bennett* has some certainty begun to develop over who

may use the mark THE PLATTERS, and who may preclude or condition others' use. Consequently, the Court will award sales only from the date the Court granted summary judgment and entered a permanent injunction in *Reed v. Bennett*, June 30, 2011,[3] forward. For these same reasons, the Court declines to award treble damages. Although Defendants intentionally chose to use the mark THE PLATTERS, they did so in the context of the web of litigation and uncertainty surrounding legitimate uses of the mark. Considering all the circumstances, the Court finds an award of $14,720 for domestic profits to be just.

### b. Foreign Sales

Plaintiffs also seek $45,000 in damages from Defendants' sales for performances in foreign countries. Defendants respond by arguing this Court already ruled it had no jurisdiction over the foreign performances when it denied Plaintiffs' Motion for Order to Show Cause Why Defendants Should Not Be Held in Contempt.

█ The Lanham Act applies extraterritorially to conduct in a foreign country if (1) the alleged violations "create some effect on American foreign commerce," (2) that effect is "sufficiently great to present a cognizable injury to the plaintiffs under the Lanham Act," and (3) "the interests of and links to American foreign commerce" are "sufficiently strong in relation to those of other nations to justify an assertion of extraterritorial authority." *Love v. Assoc. Newspapers, Ltd.*, 611 F.3d 601, 612–13 (9th Cir.2010). "The first two criteria may be met even where all of the challenged transactions occurred abroad, and where injury would seem to be limited to the deception of consumers abroad, as long as there is monetary injury in the United

---

**3.** *Herb Reed Enterprises, Inc. v. Bennett*, 2:10– CV–01981–JCM–RJJ, Order (Doc. # 65).

States to an American plaintiff." *Id.* (quotation omitted); *see also Ocean Garden, Inc. v. Marktrade Co., Inc.,* 953 F.2d 500, 503 (9th Cir.1991). As to the third factor, the Court considers seven subfactors:

[T]he degree of conflict with foreign law or policy, the nationality or allegiance of the parties and the locations or principal places of business of corporations, the extent to which enforcement by either state can be expected to achieve compliance, the relative significance of effects on the United States as compared with those · elsewhere, the extent to which there is explicit purpose to harm or affect American commerce, the foreseeability of such effect, and the relative importance to the violations . charged of conduct within the United States as compared with conduct abroad.

*Reebok Int'l, Ltd. v. Marnatech Enters., Inc.,* 970 F.2d 552, 555·(9th Cir.1992) (quotation omitted).

 Plaintiffs challenge a transaction for a series of live performances in Australia for which Defendants were compensated $45,000. (*See* Sommers Decl., Ex. 7.) Plaintiffs have presented evidence Defendants book through a United States and Canadian booking agent, and Plaintiffs similarly seek to book live performances through booking agents nationally and internationally. (Balboni Decl. at 4–5.) Plaintiffs also have presented evidence that Plaintiffs' ability to book internationally has been detrimentally impacted by Defendants and others performing abroad as The Platters. (*Id.* at 5.) Thus, Plaintiffs have presented evidence that although the conduct occurred abroad, there is monetary injury in the United States to an American plaintiff.

As to third factor, Defendants have not identified any conflict with Australian law or policy that would occur due to extraterritorial application of the Lanham Act in this case. The parties are all located in the United States. (Compl. (Doc.# 1) at 2–3; Ans. (Doc. # 31) at 1–2.) Because all parties are located in America, and· are parties to this lawsuit, compliance with enforcement can be achieved in America. The effects are felt by American companies located in the United States, and the harm to Plaintiffs is foreseeable because the parties compete nationally and internationally for bookings for live performances of The Platters. The violations are important within the United States because they impact American entities.

Defendants do not dispute these factors support applying the Lanham Act to Defendants' ·extraterritorial activities. Instead, Defendants argue this Court already determined that it has no jurisdiction over Defendants' conduct in foreign countries. Defendants base this argument on comments the Court made at a December 20, 2012 hearing. However, the Court indicated only that the Court lacked jurisdiction over the foreign entities such as the venues or promoters who were advertising Defendants as The Platters. The Court did not indicate that it lacked jurisdiction to award relief against Defendants, who are before the Court, for extraterritorial conduct that violates the Lanham Act. Because the Court finds the Lanham Act applies to Defendants' extraterritorial conduct, and because the Australian performances post-date · the *Reed v. Bennett* permanent injunction, the Court will award $45,000 in damages for the Australian performances.

## III. CONCLUSION

IT IS THEREFORE ORDERED that Plaintiffs' Motion for Summary Judgment · (Doc. # 135) is hereby GRANTED.

IT IS FURTHER ORDERED that Judgment is hereby entered in favor of Plaintiffs Herb Reed Enterprises, Inc. and

Herb Reed Enterprises, LLC, and against Defendants Monroe Powell's Platters, LLC; Monroe Powell; and Don Gloude in the amount of $59,720.00.

IT IS FURTHER ORDERED that Defendants Monroe Powell's Platters, LLC; Monroe Powell; and Don Gloude, their agents, servants, representatives, licensees, affiliates, successors, assigns, attorneys, partners, officers, employees, and all persons, firms, or corporations in active concert of participation with any of them, are immediately and permanently enjoined, anywhere in the world, directly or indirectly, as follows:

A. From using the mark THE PLATTERS in connection with any vocal group, and any equivalent or phonetically similar names or marks without Plaintiffs' written permission, except that they may use the name "Monroe Powell's Tribute to The Platters" or "Monroe Powell's Salute to The Platters," with the font size of all words being approximately the same size;

B. From using the mark THE PLATTERS in connection with any vocal group in any advertisements, promotional, marketing, or other materials, except as qualified under Paragraph A;

C. From causing, aiding, or assisting any person or entity to engage in any live musical performance or related entertainment service using the mark THE PLATTERS, except as qualified under Paragraph A;

D. From asserting in any advertising that Monroe Powell has rights at common law or otherwise in the mark THE PLATTERS and was a member of the original group The Platters; and

E. From effecting assignments or transfers, forming new entities or associations, or utilizing any other means for the purpose of circumventing or otherwise avoiding the prohibitions of this Permanent Injunction.

IT IS FURTHER ORDERED that Defendants' Motion to Set Aside the Preliminary Injunction (Doc. # 158) is hereby DENIED as moot.